Gary RICHARDS,
Plaintiff-Respondent,†

v.

FIRST UNION SECURITIES, INC.,
Defendant-Appellant.

Court of Appeals

*No. 2004AP1877. Submitted on briefs April 14, 2005.
—Decided June 1, 2005.*

2005 WI App 164

(Also reported in 702 N.W.2d 45.)

† Petition to review granted 11-15-05.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Michael H. Schaalman* and *Robert J. Pluta* of *Quarles & Brady LLP*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James Bolt*, New Berlin.

Before Anderson, P.J., Brown and Snyder, JJ.

¶ 1. ANDERSON, P.J.   First Union Securities, Inc.[1] appeals from a circuit court order denying its motion to reopen a default judgment entered in favor of Gary Richards. First Union contends that the circuit court's determination that it waived its jurisdictional defense of insufficient service of process was in error. First Union then argues that the service of process upon it was improper because Richards did not serve one of its officers, directors or managing agents nor did he serve the person in charge of the office of one of its officers, directors or managing agents. According to First Union, because service was defective, the circuit court lacked personal jurisdiction over it in the first instance and the default judgment was void. We agree with First Union and reverse the order of the circuit court.

## I. Facts

¶ 2.   On July 23, 2002, Richards filed an action against First Union in part to recover investment losses as the result of alleged violations of the anti-fraud sections of the Wisconsin Uniform Securities Law. The affidavit of service indicates that on July 24 the process server served First Union at its office in Brookfield. According to a subsequent affidavit of the process

---

[1] First Union Securities, Inc. is now known as "Wachovia Securities, Inc." We, like the parties and the trial court, will refer to the defendant as First Union.

server, "[w]hen serving legal process on a corporate defendant it is always my practice to state the purpose of my appearance and to ask the office personnel to identify and to direct me to the individual authorized to accept service for the company . . . and to confirm that individual's authority to accept service." In this case, Kim Wisniewski, a First Union employee at the Brookfield office, accepted service.

¶ 3. In September, First Union contacted Richards to inform him that there was a written agreement which required him to arbitrate his disputes. Richards consented to arbitration and First Union agreed to pay the arbitration filing fee. In addition, Richards agreed to an extension of time for First Union to answer or otherwise respond to the complaint. First Union failed to tender the arbitration filing fee or to file an answer. On October 29, Richards sent a letter to First Union stating that the court had issued a notice of dismissal and that if the arbitration fee was not paid by November 5, the offer to arbitrate would be withdrawn and the lawsuit would proceed. On November 12, Richards filed a motion for default judgment for failure to answer. The court entered default judgment against First Union.

¶ 4. One year later, on November 13, 2003, Richards sent a letter demanding payment of the judgment. When First Union failed to pay the amount owed, Richards began garnishment proceedings. First Union filed an answer to the garnishment on February 9, 2004, and a motion to reopen the default judgment on February 25 based in part on its claim of insufficient service of process.

¶ 5. After submitting its motion, First Union filed the affidavits of Wisniewski, the employee who accepted service, and Ronald McGrath, the branch manager of the Brookfield office. In her affidavit, Wisniewski stated that

535

she was in charge of the back office operations in the Brookfield office. She explained that this meant she was "responsible for making sure that the brokers in the Brookfield office properly fill out the forms to complete transactions for their customers in compliance with the rules and policies of the firm." She further averred that she was not an officer, director or managing agent of First Union; she was not in charge of the Brookfield office and had never told anyone that she was in charge; and she was not authorized to accept complaints filed against the brokers of the firm. McGrath stated that while he was the branch manager of the Brookfield office, he was not an officer, director or managing agent of First Union. He stated that there are no officers, directors or managing agents of First Union in Wisconsin and that there are no employees otherwise authorized to accept service of process in the state. He explained that First Union is a Delaware corporation having its principal place of business in Virginia and its registered agent in the state is CSC-Layers Incorporating Service Company in Madison. He further averred that he was the person in charge of the Brookfield office.

¶ 6.   The circuit court heard arguments on First Union's motion in April 2004. In a written decision, the circuit court denied the motion. The court wrote "the record clearly reflects that defects in personal service were waived."

## II. Standard of Review

¶ 7.   Granting, and granting relief from, a default judgment rests within the circuit court's discretion. *Split Rock Hardwoods, Inc. v. Lumber Liquidators, Inc.*, 2002 WI 66, ¶ 63, 253 Wis. 2d 238, 646 N.W.2d 19; *Holman v. Family Health Plan*, 227 Wis. 2d 478, 483,

596 N.W.2d 358 (1999). "A circuit court properly exercises its discretion when it considers the relevant facts, applies the correct law, and articulates a reasonable basis for its decision." *National Auto Truckstops, Inc. v. DOT*, 2003 WI 95, ¶ 12, 263 Wis. 2d 649, 665 N.W.2d 198. If the circuit court decision involves a question of law, "we review the question of law de novo and reverse if the exercise of discretion is based on an error of law." *Paige K.B. v. Steven G.B.*, 226 Wis. 2d 210, 225, 594 N.W.2d 370 (1999) (citations omitted).

■■

¶ 8.   "The service of a summons in a manner prescribed by statute is a condition precedent to a valid exercise of personal jurisdiction . . . ." *Danielson v. Brody Seating Co.*, 71 Wis. 2d 424, 429, 238 N.W.2d 531 (1976). "Whether service of a summons is sufficient to obtain personal jurisdiction over a defendant involves the interpretation and application of a statute to undisputed facts and is reviewed as a question of law." *Useni v. Boudron*, 2003 WI App 98, ¶ 8, 264 Wis. 2d 783, 662 N.W.2d 672. The party seeking to vacate judgment has the burden of proving lack of effective service. *Haselow v. Gauthier*, 212 Wis. 2d 580, 587, 569 N.W.2d 97 (Ct. App. 1997).

### III. Discussion

¶ 9.   First Union maintains that the circuit court's refusal to vacate the default judgment and dismiss Richards' action was in error. As a preliminary matter, First Union challenges the circuit court's determination that it waived its defense of lack of personal jurisdiction. First Union then argues that based on the facts of record, Richards' service of process upon it was not in compliance with the statutory rules governing service

on a foreign corporation. Thus, according to First Union, the circuit court lacked personal jurisdiction over it and the default judgment was void.

### A. Waiver

¶ 10. The circuit court concluded that First Union waived the right to object to a lack of personal jurisdiction for want of proper service of process. It is difficult to discern from the record why the circuit court came to this conclusion and Richards does not argue this point on appeal.

¶ 11. As explained, proper service of a summons and complaint is required to confer personal jurisdiction on the court over the person served. *Useni*, 264 Wis. 2d 783, ¶ 12. Personal jurisdiction and a party's waiver of jurisdictional defenses are controlled by statute. *Sacotte v. Ideal-Werk Krug & Priester Machinen-Fabrik*, 119 Wis. 2d 14, 16, 349 N.W.2d 701 (Ct. App. 1984), *aff'd*, 121 Wis. 2d 401, 359 N.W.2d 393 (1984); *see also* WIS. STAT. §§ 801.11 and 802.06(8) (2003–04).[2] Section 802.06(8) provides that objections to personal jurisdiction are waived only if omitted from § 802.06 motions or the responsive pleadings. Sec. 802.06(8); *see also Honeycrest Farms, Inc. v. A.O. Smith Corp.*, 169 Wis. 2d 596, 601–02, 486 N.W.2d 539 (Ct. App. 1992). Here, First Union did not file any motions or answers prior to the entry of the default judgment. Thus, in its motion to vacate the default judgment, its first action before the court in this case, First Union properly raised its jurisdictional defense. *See Useni*, 264 Wis. 2d 783, ¶ 12 (holding that a defendant who raised the

---

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

issue of lack of personal jurisdiction for insufficient service of process in a motion submitted after default judgment was entered did not waive the right to object to lack of personal jurisdiction). Accordingly, we refuse to base our decision on any purported waiver of objections to personal jurisdiction.

## B. Sufficiency of Service of Process

¶ 12. WISCONSIN STAT. §§ 180.0504(1) and 801.11(5)(a) specify, respectively, that a plaintiff may invoke personal jurisdiction over a foreign corporation by serving the corporation's registered agent or

> [b]y personally serving the summons upon an officer, director or managing agent of the corporation or limited liability company either within or without this state. In lieu of delivering the copy of the summons to the officer specified, the copy may be left in the office of such officer, director or managing agent with the person who is apparently in charge of the office.

Richards did not exercise the option of serving First Union's registered agent. The dispute in this case is whether Richards' presentation of the summons and complaint to Wisniewski complied with either the direct personal delivery service option or the alternative service option.[3]

### 1. Personal Delivery Service Option

¶ 13. First Union argued before the circuit court, as it does here, that Wisniewski was not an officer,

---

[3] In *Bar Code Resources, a Division of Allen Management, Inc. v. Ameritech Information Systems, Inc.*, 229 Wis. 2d 287, 290–91, 599 N.W.2d 872 (Ct. App. 1999), we referred to the two service options as the "direct personal delivery service option" and the "alternative service option." For continuity and ease of reference, we will use these phrases here.

director or managing agent of First Union and therefore Richards' presentation of the summons and complaint to her failed the direct personal delivery service option under Wis. Stat. § 801.11(5). Richards does not appear to challenge this assertion on appeal.

¶ 14.   The record does not show that Wisniewski was an officer or director of First Union. In *Carroll v. Wisconsin Power & Light Co.*, 273 Wis. 490, 494, 79 N.W.2d 1 (1956), our supreme court defined "managing agent" as "a person possessing and exercising the right of general control, authority, judgment, and discretion over the business or affairs of the corporation, either on an over-all or part basis, *i.e.*, everywhere or in a particular branch or district." The evidence is clear that Wisniewski possessed no such authority in her position in the back office of the First Union Brookfield office. Her authority was not general, but was limited to ensuring the proper completion of forms concerning customer transactions. Because Wisniewski was not an officer, director, or managing agent, she was not one within the class of persons upon whom corporate service could be made.

2. Alternative Service Option

¶ 15.   Having determined that Richards did not use the direct personal delivery service option, we turn to the question of whether Richards' presentation of the summons and complaint to Wisniewski satisfied the alternative service option. Whether a party has complied with the alternative service option under Wis. Stat. § 801.11(5)(a) presents two questions:   (1) Objectively, was the location where the summons and com-

plaint were presented "the office of [an] officer, director or managing agent"? and (2) Subjectively, was it reasonable for the process server to conclude that the person presented with the summons and complaint was "the person who is apparently in charge of the office"? *Bar Code Res., a Div. of Allen Mgmt., Inc. v. Ameritech Info. Sys., Inc.*, 229 Wis. 2d 287, 292, 599 N.W.2d 872 (Ct. App. 1999). *See also Hagen v. City of Milwaukee Employes' Ret. Sys. Annuity & Pension Bd.*, 2003 WI 56, ¶ 24, 262 Wis. 2d 113, 663 N.W.2d 268. Proper analysis must begin with the first question because if, in fact, the process server simply fails to locate the correct office, service cannot be accomplished and the second question need not be considered. *See Bar Code Res.*, 229 Wis. 2d at 292; *Hagen*, 262 Wis. 2d 113, ¶ 24 ("Service on a person 'apparently in charge' of the wrong office is insufficient, even if it is based upon a process server's reasonable belief in the propriety of service.").

¶ 16.  First Union submits that the first prong of the alternative service option was not satisfied because McGrath, the "branch manager" for the First Union Brookfield office, was not an officer, director or managing agent and Wisniewski was not "apparently in charge" of the Brookfield office. Richards responds that McGrath was both an officer and a managing agent at First Union. However, because Richards' argument concerning McGrath's status as an officer of the corporation was based entirely on a stricken portion of the record and we find no other evidence to support this contention, we will address in more detail only the question of whether McGrath was a managing agent.

¶ 17.  In *Carroll*, the case in which our supreme court set forth the definition of "managing agent," the court addressed the issue of whether a "generating-station manager" of one of several generator plants

owned by a corporation was a managing agent within the meaning of what is now WIS. STAT. § 801.11(5)(a). *Carroll*, 273 Wis. at 491–92. The station manager directed operations at the plant, had charge of its machinery and maintenance, and had authority over all plant employees. *Id.* at 493. He reported to an individual charged with managing all of the corporation's generating plants, and did not have authority to hire employees or purchase supplies. *Id.* Despite the station manager's job title and managerial duties, the *Carroll* court concluded that the station manager was not a "managing agent":

> The evidence is clear that [the station manager] possessed no such authority with reference to his employment by the corporation . . . . His authority was not general, but was limited to the management of the physical operation of the plant and its maintenance, and some physical service at smaller plants of the company.

*Id.* at 494.

¶ 18. Applying *Carroll* to the present factual scenario, we conclude that McGrath was not a managing agent of First Union. Our conclusion rests on McGrath's affidavit, as there is no other evidence in the record regarding his position that is of assistance. McGrath's affidavit is silent with regard to the exact nature of the work he performs, the nature of his authority, the scope of his duties, and his precise position within First Union's corporate structure. From the affidavit, we know only that he was the "branch manager" in charge of the First Union Brookfield office. However, as *Carroll* teaches, the mere title of an employee's position within a corporation does not make

him or her a managing agent; rather, whether an employee is a managing agent is controlled by the powers he or she possesses and the work he or she performs. *See id.* Thus, McGrath's designation as a "branch manager" alone does not sufficiently demonstrate that he was cloaked with the general responsibilities envisioned by the Wisconsin Statutes such that he is a "managing agent" and proper person to receive service.

¶ 19. Richards makes a tempting argument that as branch manager McGrath assumed the responsibility of ensuring compliance with state and federal securities laws and, therefore, he possessed the general authority required to satisfy the definition of "managing agent." However, the scant evidence in the record prevents us from drawing such a conclusion.

¶ 20. It may be true that both state and federal securities laws require securities broker dealers to have on file written supervisory procedures designed to prevent and detect violations and that such procedures must include the names of individuals delegated the supervisory responsibilities within the corporation. *See* Wis. Admin. Code §§ DFI-Sec 4.04(7)(c) and 4.05(2) (Nov. 2003);[4] 17 C.F.R. § 240.17a-3(a)(22), 3(h)(2) (2005).[5] However, we have no way of knowing that McGrath was the individual at the Brookfield branch office entrusted with carrying out these responsibilities. McGrath's title of "branch manager," without more information, has little to no meaning for our purposes.

---

[4] All references to the Wisconsin Administrative Code are to the November 2003 version unless otherwise noted.

[5] Unless otherwise noted, all references to the Code of Federal Regulations are to the 2005 version.

¶ 21.   Furthermore, the regulations Richards cites pertain to the fiduciary duties each broker dealer owes its customers. *See generally United States Sec. and Exch. Comm'n v. Capital Gains Research Bureau, Inc.,* 375 U.S. 180, 186 (1963) (holding that "[a] fundamental purpose [of the Securities Exchange Act of 1934] was to substitute a philosophy of full disclosure for the philosophy of caveat emptor and thus to achieve a high standard of business ethics in the securities industry"); *State v. Woodington,* 31 Wis. 2d 151, 182, 142 N.W.2d 810 (1966) (concluding that the public purpose of securities law is to protect the investing public from fraudulent practices). We question whether the carrying out of such fiduciary obligations can be equated with the general supervisory authority over the business affairs of a corporation required for a "managing agent" under *Carroll.*

¶ 22.   There is simply not sufficient evidence to convince us that McGrath had general supervisory authority with regard to the business affairs of First Union. Therefore, service of process upon Wisniewski, regardless of whether she was in charge of the Brookfield office at the time of service, did not constitute proper service of the office of an officer, director or managing agent. *See Bar Code Res.,* 229 Wis. 2d at 292; *Hagen,* 262 Wis. 2d 113, ¶ 24.

■■■■■■

¶ 23.   Wisconsin compels strict compliance with the rules of statutory service, even though the consequences may appear to be harsh. *Useni,* 264 Wis. 2d 783, ¶ 13. Our supreme court has held that service of a summons in a manner prescribed by statute is a condition precedent to a valid exercise of personal jurisdiction, despite actual knowledge by the defendant. *Id.* A judgment rendered where the court lacks personal

jurisdiction over a party for failure to comply with the rules of service of process is considered void and may be set aside at any time. *Haselow*, 212 Wis. 2d at 586–87; *West v. West*, 82 Wis. 2d 158, 166, 262 N.W.2d 87 (1978) ("A void judgment may be expunged by a court at any time."). Therefore, because Richards' service of process failed to comport with the statutory requirements for service on a foreign corporation, the circuit court lacked personal jurisdiction over First Union and the default judgment is void.

*By the Court.*—Order reversed.

¶ 24. BROWN, J. (*dissenting*). The key issue in this case is whether First Union's branch office was a proper place to serve process on First Union. Everyone agrees that process is effectively served when left with someone apparently in charge of a managing agent's office. The only question here then is whether McGrath, the branch manager, was such an agent. The majority voids Richards' default judgment against First Union because "the scant evidence in the record" makes it impossible to ascertain McGrath's precise job description and authority. *See* majority op., ¶¶ 18–22. The court errs manifestly in two respects. First, Richards has no duty to prove McGrath is a managing agent. Rather, First Union must prove McGrath is *not* such a person. Second, securities regulations confer certain duties on branch managers *as a matter of law*. These legally derived powers and responsibilities bring McGrath within the definition of "managing agent," irrespective of whether the factual record bears out his exercise of those functions. Moreover, what sparse evidence the record does contain tends to support McGrath's authority as a managing agent. For these reasons, I respectfully dissent.

¶ 25. The dearth of factual information in the record makes it particularly important to place the burden of proof on the proper party. We review independently which party bears the burden of proof and whether that party has met its burden; these issues present legal questions. *Long v. Ardestani*, 2001 WI App 46, ¶ 36, 241 Wis. 2d 498, 624 N.W.2d 405; *Wolfe v. Wolfe*, 2000 WI App 93, ¶ 14, 234 Wis. 2d 449, 610 N.W.2d 222. Generally, the party invoking the judicial process in favor of its position bears this burden, *Wolfe*, 234 Wis. 2d 449, ¶ 15, and that rule certainly applies to this case. According to *Haselow v. Gauthier*, 212 Wis. 2d 580, 585, 587, 569 N.W.2d 97 (Ct. App. 1997), the party seeking to vacate a default judgment has the burden of proving *lack* of effective service. *See also Emery v. Emery*, 124 Wis. 2d 613, 622–23, 369 N.W.2d 728 (1985).

¶ 26. In order for First Union to properly meet its obligation to prove ineffective service, it must offer more than McGrath's conclusory declaration that he does not qualify as a managing agent. His bald assertion does not substitute for evidence, as the majority suggests, just because the record is otherwise lacking. To the contrary, First Union must present facts that sufficiently demonstrate why his position as branch manager does not make him a managing agent. Without this showing, First Union cannot prove that the branch office where McGrath works was the wrong place to serve process.

¶ 27. The "scant evidence in the record" convincingly demonstrates First Union's failure to meet its burden. For that reason alone, Richards should prevail. At the very least, if the majority has concerns about the lack of factual information, it should remand the case back to the circuit court to make the proper findings. Instead, it improperly shifts the burden to Richards.

¶ 28. Despite the fact that Richards has no duty to establish McGrath's status as a managing agent for First Union, securities regulations and facts of record support the inference that a branch manager is a managing agent. Securities and Exchange Commission regulations designate certain individuals, including branch managers, as "principals." For purposes of SEC, General Rules and Regulations, Securities Exchange Act of 1934, 17 C.F.R. § 240.17a-3(h)(2), "principal means any individual registered with a national registered securities association as a principal or branch manager of a member, broker or dealer or any other person who has been delegated supervisory responsibility over associated persons by the member, broker or dealer."

¶ 29. Securities and Exchange Commission, General Rules and Regulations, Securities Exchange Act of 1934, 17 C.F.R. § 240.17a-3 mentions several functions performed by principals that suggest a high degree of "general control, authority, judgment, and discretion . . . either on an overall or part basis." *See Carroll v. Wisconsin Power & Light Co.*, 273 Wis. 490, 494, 79 N.W.2d 1 (1956) (defining "managing agent"). Federal law requires all brokers and dealers in securities to keep certain documents. Sec. 240.17a-3(a). These documents include:

> [a] record listing each principal of a member, broker or dealer *responsible for establishing policies and procedures that are reasonably designed to ensure compliance with any applicable federal requirements* or rules of a self-regulatory organization of which the member, broker or dealer is a member *that require acceptance or approval of a record by a principal.*

Sec. 240.17a-3(a)(22) (emphases added). They also include records

*documenting that the member, broker or dealer has complied with, or adopted policies and procedures reasonably designed to establish compliance with, applicable federal requirements* and rules of a self-regulatory organization of which the member, broker or dealer is a member *which require that advertisements, sales literature, or any other communications with the public* by a member, broker or dealer or its associated persons *be approved by a principal.*

Sec. 240.17a-3(a)(20) (emphases added). Federal regulations further require

[a]n account record including the customer's or owner's name, tax identification number, address, telephone number, date of birth, employment status (including occupation and whether the customer is an associated person of a member, broker or dealer), annual income, net worth (excluding value of primary residence), and the account's investment objectives . . . . *The account record shall indicate whether it has been* signed by the associated person responsible for the account, if any, and *approved or accepted by a principal* of the member, broker or dealer.

Sec. 240.17a-3(a)(17)(i)(A) (emphases added).

¶ 30. Wisconsin securities regulations also suggest that branch managers have a broad degree of general authority over their particular branches. WISCONSIN ADMIN. CODE § DFI-Sec 4.04(7)(c) requires every branch office, upon opening, to file certain information, including the name of the supervisor at that office. Like the federal regulations, WIS. ADMIN. CODE § DFI-Sec. 4.05(2) also requires a complete set of written supervisory procedures to be kept at every branch office, along with a system for implementing them. These procedures and implementation system are designed to prevent and detect any violations of Wisconsin securities

statutes. *See* § DFI-Sec 4.05(2); Wis. Stat. ch. 551 (entitled "WISCONSIN UNIFORM SECURITIES LAW"). The procedures further require designation of supervisory employees "reasonable in relation to the number of [the broker-dealer's] licensed agents." § DFI–Sec. 4.05(2). The fact that compliance procedures must designate supervisory employees suggests that these individuals bear the responsibility for ensuring that the broker-dealer follows the procedures.

¶ 31. These various regulations plainly reveal that principals, including branch managers, have the authority, and often the *duty,* to approve accounts, to implement measures that comply with applicable securities regulations, and to approve advertisements, sales literature, and other communications to the public. These functions make a branch manager of a securities broker or dealer far different from the plant manager in *Carroll.* That individual's functions were limited to physical operation and maintenance of the plant, essentially making sure that machinery ran properly. *Carroll,* 273 Wis. at 494. A branch manager's duties, by contrast, reveal a broad degree of *supervisory* and *policy making* authority as well as the power to act for the company in a representative capacity vis-à-vis the public. *Cf. also* Black's Law Dictionary 1230–31 (8th ed. 2004) (defining a principal as "[o]ne who authorizes another to act . . . as an agent" or "who has primary responsibility on an obligation.").

¶ 32. The majority admits that the responsibilities required by applicable securities regulations impose fiduciary duties on principals. Yet, it questions "whether the carrying out of such fiduciary obligations can be equated with the general supervisory authority over the business affairs of a corporation required for a 'managing agent' under *Carroll.*" Majority op., ¶ 21. I

549

am confident that the very nature of the duties just described speaks for itself. Moreover, I do not see how a branch manager could have such fiduciary duties without holding a general supervisory and policymaking role. *Cf. Modern Materials, Inc. v. Advanced Tooling Specialists, Inc.*, 206 Wis. 2d 435, 557 N.W.2d 835 (Ct. App. 1996) (describing when an employee owes a fiduciary duty to the employing company). In *Modern Materials*, we recognized that "whether an employee is vested with policy-making authority or has the ability to make decisions which bind the company" is "the *controlling question*" on the determination of fiduciary capacity. *Id.* at 443–44 (emphasis added).

¶ 33.   Despite the scant information in the record, it does contain evidence that McGrath, acting in his capacity as branch manager, exercised some of the authority applicable securities regulations delegate to principals. The record contains, for example, an agreement between Richards and First Union's predecessor, Blunt Ellis & Loewi. The form contains a signature line marked "branch approval" with a box reserved for the branch office manager's signature. The fact that the branch manager signed the form is consistent with federal regulations that confer upon branch managers and other principals the authority to approve accounts.

¶ 34.   Moreover, as the above discussion indicates, someone at each branch office has the responsibility to ensure compliance with securities regulations. Consistent with that mandate, McGrath admits in his affidavit, "I am the person in charge of the Brookfield Branch office . . . I was also the person in charge of the Brookfield Branch office during the entire year of 2002." It simply is not reasonable to assume without solid evidence to the contrary that someone other than "the

person in charge" of the branch office has the ultimate responsibility of ensuring the branch's compliance with the law.

¶ 35. First Union should not be allowed to defeat the default judgment in Richards' favor. Securities regulations expressly recognize branch managers as principals endowed with certain authority. The functions enumerated in these laws are consistent with the broad general authority of a managing agent. First Union essentially argues that although McGrath has the title "branch manager," he does not have any of the legally imposed fiduciary duties that securities regulations assign to a "branch manager." Perhaps First Union uses different terminology to describe various positions within its structure than that used in the securities regulations and has assigned a role equivalent to "branch manager" to someone other than McGrath. However, I do not see how this court can accept such a position without some factual basis. If we are not going to send the case back to the circuit court for appropriate fact finding in this regard, we should affirm. Because the majority instead misallocates the burden of proof to Richards, I must dissent.