Taneceia LARRY, Plaintiff-Appellant,†

v.

Derrick L. HARRIS, ABC Insurance Corporation and Officer John Roe, Defendants,

Carlos RUTHERFORD, Defendant-Respondent.

Court of Appeals

*No. 2005AP2935. Submitted on briefs January 3, 2007. —Decided March 20, 2007.*

2007 WI App 132

(Also reported in 733 N.W.2d 911.)

† Petition to review granted 9/14/07.

243

244

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *A. Steven Porter* of Madison and *Robert J. Kasieta* of *Kasieta Legal Group, LLC* of Madison.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Jonathan Cermele* and *Rachel L. Pings* of *Cermele & Associates, S.C.* of Milwaukee.

A non-party brief was filed by *Jan A. Smokowicz,* assistant city attorney and *Grant F. Langley,* city attorney.

Before Wedemeyer, P.J., Fine and Kessler, JJ.

¶ 1. KESSLER, J. Taneceia Larry appeals from a judgment and an order of the trial court in which the court, on its own motion, rescinded a previously entered default judgment in favor of Larry and dismissed Larry's complaint against the defaulting party, Carlos Rutherford.[1] Larry also appeals from the trial court's denial of her motion to reconsider the rescission and the dismissal. Because it is established law that a court may, on its own motion, exercise its discretion to set aside a prior judgment or order under WIS. STAT. § 806.07(1)(h) (2005–06),[2] if the court provides all interested parties with notice of the proposed action and a reasonable opportunity to be heard, and because we conclude that all interested parties had an opportunity to be heard on the question of rescission of the default judgment in the proceedings surrounding the motion to reconsider and on this appeal, we affirm.

## BACKGROUND

¶ 2. Larry was arrested after she gave a ride, at about 11:00 p.m., to a man she knew by sight, from a gas station to her house. Larry was present at the gas station where police allege the man was selling illegal substances. Larry's car was followed from the gas

---

[1] For the first time in this case, Rutherford appears by counsel in this appeal.

[2] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

station by an unmarked police vehicle. When she stopped at her house, her passenger exited and fled. Police gave chase, but did not catch the man. The officers returned to Larry's house where she waited outside for them. Larry was questioned and subsequently arrested. Larry was never charged with any crime. She consented to a search of her car, but specifically objected to officers entering her house. There was no search warrant for the house. One or more officers entered Larry's house for a short period of time[3] after learning from Larry that her seventeen-year-old niece was babysitting Larry's five children in the house. The officer who entered walked through the house, looked at pictures, opened doors, woke the children and asked them questions, and also questioned the babysitter. Nothing was taken from the house.

¶ 3. Larry sued two named police officers, Derrick L. Harris and Carlos Rutherford, and unknown officers. Her complaint alleged that Harris and an unknown officer entered her house without a warrant, without probable cause, and over her specific objection, thus violating 42 U.S.C. §§ 1983 and 1988, and her Fourth and Fourteenth Amendment rights. She alleges that while in her house the officers "interrogated" her niece who was watching Larry's five children, woke and "interrogated" her children, and "searched" her house. Larry's specific allegation against Rutherford is:

---

[3] Larry claims that two officers were inside her house for approximately twenty minutes. One of the officers who admitted he entered the house puts the time at five minutes. The trial court apparently concluded that the exact amount of time was not material, and that only one officer was actually in the house. The trial court's findings and grant of summary judgment have not been appealed.

> Upon information and belief, at the time the officers illegally searched her home [Rutherford] either participated in that search or was present, having custody over Ms. Larry, and, having the opportunity to do so, failed to intercede to stop the illegal search of her home and interrogation of her children and thus violated Ms. Larry's rights.

Larry moved for a default judgment against Rutherford and Harris with the amount of damages to be later determined. Larry's counsel submitted an affidavit which attached proof that both Harris and Rutherford had been served, stated that neither had appeared in the action and that "[n]o issue of law or fact has been joined in this case and the time for joining issue has expired." Harris responded to the motion, objected to the default, and filed a proposed answer. The trial court denied a default judgment against Harris and permitted the answer. On September 3, 2004, on the basis of Larry's counsel's affidavit, the trial court granted default judgment against Rutherford.

¶ 4. In April 2005, defendant Harris moved for summary judgment dismissing Larry's claims against him. Larry and Harris submitted affidavits supporting, and briefs arguing, their respective positions.

¶ 5. In support of summary judgment, Harris argued that there was no illegal search and that he was protected by qualified immunity. Harris stated in his affidavit that he did not enter Larry's house "at any time for any purpose," but that a Sergeant M'Johno Foster did. Harris stated that the reason Foster entered the house was that Larry had been arrested, was going to be taken to jail, and they had learned there were children in the house. Harris explained that Foster entered the house "[b]ecause we were concerned that there would not be someone in the home to care for the

children[.] Sergeant Foster went to the house to check to ensure that there was someone old enough in the home to care for the children." Harris said he saw Foster go towards the house, that Foster was gone a very short time, and that Foster had nothing in his hands from the house when he returned to the squad car. Sergeant Foster stated in his affidavit that he was the only person who entered the house, that he was in the house for less than five minutes, that he spoke to someone who appeared to be sixteen to seventeen years old, that he saw two young children who were not infants sleeping on the floor, that he touched nothing in the house and opened no doors or drawers, and that he and Harris were the only officers present when he went into the house. Foster's reason for entering the house was "I wanted to ensure that the children were in the care of someone of a suitable age because Ms. Larry was going to be taken from the scene."

¶ 6. Larry argued that what occurred was a warrantless search of her house, which is presumptively unreasonable under the Fourth Amendment, and that there were no exigent circumstances which justified the search. She claimed the defense being asserted was frivolous. Larry's affidavit disputes the police motives, but corroborates or does not dispute the material physical facts. She specifically identifies Harris and Foster as the officers who were in the police vehicle that followed her and who chased the man who exited her car. She specifically identifies Harris and Foster as the officers who entered her house. She does not indicate that any other officers (whether known to her by name or not) besides Harris and Foster were present at the time her house was entered by police. Larry states she told the officers that her five children were sleeping in her house and that her seventeen-year-old niece was

250

babysitting them. She disputes the amount of time the officers were in the house, denies that the officers told her in advance that they wanted to check on her children, and insists they stated an intent to search her house.

¶ 7. Ms. Tamika King-Brown, Larry's seventeen-year-old niece, also provided an affidavit. She states that two officers, who she later identified as Harris and Foster, entered the house sometime after 11:00 p.m. without permission and without knocking. She states they came into the house, woke up the children, asked where their mother had been and with whom and told the children their mother was going to jail. King-Brown also stated that "[t]he officers looked at pictures in the house and searched the house by walking through the apartment and opening doors." She added that they "asked me questions as well." King-Brown makes no reference in her affidavit to Rutherford or any other unnamed officer other than Harris and Foster being present.

¶ 8. The facts and law relating to whether Harris and Foster were protected by qualified immunity were fully briefed and argued in the summary judgment motion. The trial court, on August 5, 2005, concluded that Larry had failed to establish a *prima facie* claim which would entitle her to relief against any police officer because the undisputed material facts supported only the conclusion that the police were engaged in reasonable discretionary acts, not an illegal search. The court found:

> It is undisputed that the police officers entered Ms. Larry's house without her consent. According to the facts before the Court, drawing all reasonable inferences, Defendant officers entered the home to ensure the children inside were properly supervised. Plaintiff

contends the officers asked the babysitter questions, woke her children up, asked the children questions, looked at pictures in the home and told the children their mother was going to jail. Plaintiff's contentions are not outside of the Defendant's [sic] assertions that they entered only to ensure the children were properly supervised.

. . . .

[The] officers entered the home solely for inspection purposes. The officers were legitimately concerned about the welfare of the children inside the home, whose presence was made known by Ms. Larry's comments to the officers, triggering their entry. Drawing reasonable inferences, Defendant officers did not intend to search the premises for evidence or to find criminal activity. Police officers have a duty to protect the public, and that duty includes ensuring the children mentioned here by Ms. Larry were properly supervised . . . . Defendant officers are protected by qualified immunity and they are not subject to liability for Ms. Larry's claims.

Larry did not ask the court to reconsider, nor did she appeal from, those conclusions.

¶ 9. However, the trial court also, *sua sponte,* included the following language dismissing the complaint as against Rutherford:

Also, in accordance with the above findings, this Court also vacates its default judgment against Carlos Rutherford as no improper search was conducted, and as against any other potential officer (including M'Johno Foster) whose actions Plaintiff or Defendant has described and that may have been present at the scene.

This part of the decision and order came without the trial court providing Larry with some warning of the court's intentions or an opportunity to be heard on rescission of the default judgment and dismissal of the complaint before making its August 29, 2005 order.

¶ 10. The day after the order, Larry wrote to the trial court and objected to rescission of the default judgment and dismissal of the complaint against Rutherford, asserting essentially that the trial court lacked authority to take that action when Rutherford had not requested it. She filed a motion asking the court to reconsider its decision because, she asserted, the default judgment had been properly entered (because Rutherford never appeared), that a default judgment terminates "all defenses that a defendant would otherwise have had to the allegations in a complaint," that the trial court had no authority to *sua sponte* vacate the default judgment (now more than a year old) when Rutherford never sought that relief, and that Larry never had an opportunity to oppose the vacating of the default judgment.

¶ 11. After receipt of Larry's submission, the trial court set a briefing schedule. Larry's entire argument, submitted by a one-page letter as her initial brief in support of reconsideration, stated, in relevant part:

> The court will recall we are asking your Honor to reconsider an order in which the court, *sua sponte,* ordered the reopening of the previously-entered Default Judgment and Summary Judgment against the Plaintiff in favor of the defaulting Defendant, all without any argument from the defaulting Defendant.
>
> We can find no support for this procedure and respectfully request that it be reversed.

¶ 12. In response, the City of Milwaukee[4] filed a brief in support of the court's decision. The City argued

_____

[4] The City of Milwaukee appeared in response to the motion to reconsider separately from the representation it already provided to Harris. The City asserted its interest in the proceedings based upon its obligation under Wɪs. Sᴛᴀᴛ.

that Larry's motion to reconsider should be denied because she submitted no legal authority in support of her position, and because the trial court had discretion under Wis. Stat. § 806.07(1)(h), which it properly exercised, to order relief from judgment under "extraordinary circumstances." All of these arguments were supported in the City's brief by case citations.

¶ 13. Larry replied, without any citation to supporting authority,[5] with the following arguments:

> Defense counsel appears on behalf of a party that he does not represent . . . . He attempts to bootstrap himself into position by asserting that the City might be liable for the defaulting officer's conduct . . . .

> Defense counsel supports his position by asserting that the court has plenary powers regarding default judgments. There is no issue regarding the extent of the Court's statutory powers . . . .

> Defense counsel contends that it was not until the court received the briefing on the Dispositive Motion that the court was able to determine that dismissal was appropriate for the defaulting party. This is a specious argument. If the law is as defense counsel suggests, every time summary judgment in favor of one party followed the default of a similarly-situated defendant, the default judgment would evaporate. The defense cannot cite any case supporting this result. Plaintiff has cited no case because no case supports this result. Default judgment is the waiver of all defenses by failing to timely answer a complaint. Wis. Stat. § 806.02.

---

§ 895.46(1)(a) to pay damages for any acts by Milwaukee police officers in the course of their official duties. The City continues to participate in this appeal in that capacity.

[5] The only case cited in Larry's reply brief was one cited by the City. Larry comments, without analysis or further explanation, that the facts of that case "are inapposite."

> Defenses do not spring to life anew if another defendant wins summary judgment.
>
> Plaintiff requests the Court follow the statute. Once a party has defaulted, subsequent discovery of possibly meritorious defenses does not obviate the effect of a default judgment. Nor does defense counsel have standing to raise such issues.

¶ 14. Larry had the opportunity, in support of her motion to reconsider, to offer new legal theories and new facts as to Rutherford which would support a theory of liability other than the one rejected by the trial court as to Harris and other officers. Larry's submissions in support of her motion to reconsider contain no citation to any authority for the legal conclusions she states. Nor does Larry discuss the trial court's authority to modify judgments and orders under WIS. STAT. § 806.07(1)(h). As to Rutherford, the record at the time of the motion to reconsider contained nothing more than the allegation in the complaint that "Upon information and belief . . . Rutherford either participated in that search or was present, having custody over Ms. Larry, and . . . failed to . . . stop the illegal search of her home . . . ." However, the record did contain affidavits by Harris and Foster which swore that they were the only officers present, that only Foster entered the house, and that Harris remained with Larry. The summary judgment affidavits of Larry and King-Brown also make no reference to any officers other than Foster and Harris being present. No affidavits or other evidence are presented to explain factually why the court should not have exercised its discretion to rescind the default judgment.

¶ 15. After considering the arguments of the parties, the trial court remained firm in its previous ruling. The court, in its decision on October 26, 2005, explained

that, based upon the undisputed facts, no Fourth Amendment violation occurred, and thus "judgment was not proper against any police officer present at the scene." The court observed that motions for reconsideration "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence" (quoting *Keene Corp. v. International Fid. Ins. Co.*, 561 F. Supp. 656, 665 (N.D. Ill. 1983)). The trial court correctly observed that both granting a default judgment, and granting relief therefrom, is within the trial court's discretion. *See Richards v. First Union Secs., Inc.*, 2005 WI App 164, 284 Wis. 2d 530, 702 N.W.2d 45, *rev'd on other grounds,* 2006 WI 55, 290 Wis. 2d 620, 714 N.W.2d 913. The trial court concluded that Larry "failed to identify how the Court made a manifest error of law or to bring forth new evidence concerning the default judgment against [] Rutherford."

¶ 16. Larry appeals from only that portion of the order which rescinds the default judgment against Rutherford and dismisses her claim against him.[6] She does not appeal the trial court's finding that no illegal search occurred, that there was no constitutional violation, and that the officers involved in the matters alleged in the complaint are all protected by qualified immunity.

## STANDARD OF REVIEW

¶ 17. This case requires us to review requirements of WIS. STAT. § 806.02 for granting default judg-

---

[6] There is no challenge to the trial court's conclusion that the police officers who appeared in this proceeding were protected by qualified immunity under the facts established by Larry and Harris in support of or in opposition to the summary judgment motion.

ments and the trial court's exercise of discretion under Wis. Stat. § 806.07(1)(h) when it decided *sua sponte* to set aside a default judgment. We review questions of statutory interpretation *de novo*. *State v. Stenklyft*, 2005 WI 71, ¶ 7, 281 Wis. 2d 484, 697 N.W.2d 769. We likewise review a trial court's conclusions of law *de novo*. *First Nat'l Leasing Corp. v. City of Madison*, 81 Wis. 2d 205, 208, 260 N.W.2d 251 (1977). We review a court's exercise of discretion only for an erroneous exercise of that discretion. *Sukala v. Heritage Mut. Ins. Co.*, 2005 WI 83, ¶ 8, 282 Wis. 2d 46, 698 N.W.2d 610. If the discretionary determination is based upon facts in the record, application of the correct law, and a rational mental process arriving at a reasonable result, the discretionary determination will be sustained. *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981).

## DISCUSSION

¶ 18. Wisconsin Stat. § 806.02 authorizes the court to grant a default judgment "according to the demand of the complaint" when, after proof of service of the summons and complaint, "the defendant is in default for failure to join issue." Section 806.02(2). When a personal claim is made against a defendant, in addition to proof of service, the court *"shall . . .* require proof . . . of any fact not shown by the complaint which is needed to establish grounds for personal jurisdiction" and the court *"may* require such additional proof as the interests of justice require." Section 806.02(3)(a) (emphasis added). Wisconsin courts have held that granting a default judgment is not mandatory, it requires a trial court to exercise its discretion. *Shirk v. Bowling, Inc.*, 2001 WI 36, ¶ 15, 242 Wis. 2d 153, 624 N.W.2d 375. Simply because a party is in default, there is no right to

judgment on a claim not authorized by law. *Tridle ex rel. v. Horn*, 2002 WI App 215, ¶ 11, 257 Wis. 2d 529, 652 N.W.2d 418, *overruled on other grounds by Village of Trempealeau v. Mikrut*, 2004 WI 79, 273 Wis. 2d 76, 681 N.W.2d 190; *Davis v. City of Elkhorn*, 132 Wis. 2d 394, 398–99, 393 N.W.2d 95 (Ct. App. 1986). A court properly denies a motion for a default judgment if it determines that it would be compelled under WIS. STAT. § 806.07(1) to vacate the judgment if the party opposing a default judgment has a meritorious defense to the underlying action. *Shirk*, 242 Wis. 2d 153, ¶ 17.

¶ 19. Wisconsin statutes define the circumstances that authorize a court to grant a party relief from a judgment or order. The provision relevant to this proceeding, *i.e.,* WIS. STAT. § 806.07(1)(h), allows a court to grant relief from judgment or order when:

> **(1)** On motion and upon such terms as are just, the court, subject to subs. (2) and (3), may relieve a party or legal representative from a judgment, order or stipulation for the following reasons:
>
> . . . .
>
> (h) Any other reasons justifying relief from the operation of the judgment.

■■■■

¶ 20. Relief from judgment under WIS. STAT. § 806.07(1)(h) is a discretionary act. *See State ex rel. M.L.B. v. D.G.H.*, 122 Wis. 2d 536, 541, 363 N.W.2d 419 (1985):

> A [trial] court's order denying a motion for relief under sec. 806.07 will not be reversed on appeal unless there has been a clear [erroneous exercise] of discretion. An appellate court will not find an [erroneous exercise] of discretion if the record shows that the

> [trial] court exercised its discretion and that there is a reasonable basis for the court's determination.

(Citations omitted.) A court may set aside a judgment under § 806.07(1)(h) when it reasonably exercises its discretion, and its discretion is reasonably exercised when there is a factually meritorious defense to the judgment in question, or there is no factual basis to support the judgment. *Shanee Y. v. Ronnie J.*, 2004 WI App 58, ¶¶ 10–11, 15, 271 Wis. 2d 242, 677 N.W.2d 684.

¶ 21. Although a court may, *sua sponte,* relieve a party from a judgment or order under WIS. STAT. § 806.07(1)(h), both parties affected by the judgment or order must have notice of what the court is considering doing, and must have an opportunity to be heard. *Gittel v. Abram*, 2002 WI App 113, ¶ 2, 255 Wis. 2d 767, 649 N.W.2d 661. In *Gittel*, we held that the "trial court had the authority under Wis. Stat. § 806.07(1)(h) to rescind the portion of its Decision and Order . . . on its own motion as long as both parties had adequate notice" of the action the court was considering. *Gittel*, 255 Wis. 2d 767, ¶ 2. Where the trial court's questions to defendant's attorney at the beginning of a hearing "unmistakably informed [the plaintiff's attorney] that the court [is] considering a modification" we observed that the plaintiff's attorney had a chance to object to the lack of notice before the court ruled, but did not do so. *Id.*, ¶ 28. We agreed that the plaintiff's attorney in *Gittel* did not have notice of the specific issue of the court's authority to rescind part of its prior ruling under § 806.07. *Id.*, ¶ 29. However, on appeal, the plaintiff in *Gittel* did "not point to any argument she would have made in the trial court regarding that court's authority under § 806.07 that she did not ad-

dress on appeal," and because we resolved *de novo* all such issues against plaintiff, we concluded plaintiff was not "prejudiced by the lack of notice and opportunity to be heard in the trial court." *Id.*, ¶ 29. We find the analysis in *Gittel* particularly apt here.

¶ 22. Larry did not have the advance notice we found in *Gittel*. However, unlike *Gittel*, in this case Larry objected immediately upon learning of the trial court's action and asked the court to reconsider its *sua sponte* order. After Larry learned of the court's intended action, she had an opportunity to be heard, an opportunity not present in *Gittel*, in the context of a briefing schedule on her motion to reconsider that covered several weeks. Under these circumstances, Larry had a full opportunity to apprise the trial court of all facts and law which supported her view that the court could not, or should not, rescind the previously entered default judgment against Rutherford.

¶ 23. In support of her motion to reconsider, Larry argued only that the court lacked the authority to rescind the default judgment because Rutherford had not asked for that relief. As we have seen in *Gittel*, a court may indeed rescind a prior order or decision on its own motion. *Id.*, 255 Wis. 2d 767, ¶ 2. In support of her motion to reconsider, Larry provided no new facts which suggest a theory of liability as to Rutherford which did not depend on finding an "illegal search." Thus, on the record before the trial court, it could reasonably conclude that the lack of any facts to support a theory of liability as to Rutherford establishes a meritorious defense to the complaint against him. *See Shirk*, 242 Wis. 2d 153, ¶ 19. Likewise, based upon the record, because the trial court held that no illegal

search (and hence no constitutional violation) occurred, it could properly conclude that Larry had no right to judgment on a claim not authorized by law. *See Davis*, 132 Wis. 2d at 399 ("The fact that a party may be in default cannot confer a right to judgment upon a claim not recognized by law.").

¶ 24. A court exercising its discretion as to whether to set aside a default judgment under Wis. Stat. § 806.07(1)(h) must consider several factors. In *M.L.B.*, our supreme court explained that the test of whether there are "extraordinary circumstances" is the proper way to analyze claims for relief under § 806.07(1)(h) and that this section of the statute should be used "only when the circumstances are such that the sanctity of the final judgment is outweighed by 'the incessant command of the court's conscience that justice be done in light of all the facts.'" *M.L.B.*, 122 Wis. 2d at 549–50 (citations omitted). The supreme court then instructs that in exercising its discretion, the trial court should consider the following factors to balance the competing interests of finality of judgments and relief from unjust judgments:

> [W]hether the judgment was the result of the conscientious, deliberate and well-informed choice of the [person seeking relief];
>
> [W]hether the [person seeking relief] received the effective assistance of counsel;
>
> [W]hether relief is sought from a judgment in which there has been no judicial consideration of the merits and the interest of deciding the particular case on the merits outweighs the finality of judgments;
>
> [W]hether there is a meritorious defense to the claim; and

[W]hether there are intervening circumstances making it inequitable to grant relief.

*Id.* at 552–53. We review the trial court's exercise of discretion in the context of these criteria.

¶ 25. The first two criteria (whether the judgment was the result of a well-informed choice by Rutherford, and whether Rutherford had the advice of counsel) are unknown factors in this case. They cannot, therefore, weigh in favor of either finality or justice. The judgment here was a default judgment as to which no consideration of the merits of the claim took place before the default was entered; thus reopening tends to support the goal of justice. By reopening the judgment and deciding a serious claim of constitutional violation in the same manner for all who the facts indicate engaged in the same conduct, justice is advanced at the expense of finality. That a meritorious defense exists for all officers described in the complaint was established as a finding of fact and legal conclusion which has not been appealed. Reopening a default judgment under those circumstances advances the interests of justice. Significant circumstances have intervened since the default judgment was granted; undisputed facts found in the summary judgment decision now establish a defense to the constitutional violations claimed against all officers present at the incident described in the complaint. Therefore, justice weighs heavily in favor of rescinding the default judgment which was granted without consideration of the existence of this defense. We conclude that the above considerations, applied to the facts of this case, amply support the trial court's exercise of discretion.

¶ 26. Initially, the trial court acted without advance notice. However, in setting the briefing schedule, the court provided to the parties the opportunity to be heard. We conclude that after notice of the trial court's intention, Larry had a reasonable opportunity to be heard. Neither in the motion to reconsider nor on appeal has Larry provided any alternative legal theory or new factual basis upon which she could recover against Rutherford. Consequently, we affirm.

*By the Court.*—Judgment and order affirmed.

¶ 27. FINE, J. (*dissenting*). Taneceia Larry sued Milwaukee police officers Derrick L. Harris and Carlos Rutherford, alleging that they flouted the law and violated her rights. Only Harris answered her complaint, albeit untimely; Rutherford flouted the law by not answering at all. Indeed, he never appeared before the circuit court, and the circuit court properly entered default judgment against him. *See* WIS. STAT. RULE 806.02(1) ("A default judgment may be rendered as provided in subs. (1) to (4) if no issue of law or fact has been joined and if the time for joining issue has expired. Any defendant appearing in an action shall be entitled to notice of motion for judgment."). The question, therefore, is not the propriety of the circuit court's entry of default judgment against Rutherford, but, rather, the circuit court's *sua sponte* vacatur of that default judgment *even though* Rutherford never asked for that relief, and, indeed, as noted, thumbed his nose at both the law and the circuit court by not appearing at all before the circuit court. The Majority says that it's OK.[1] I respectfully dissent.

---

[1] The Majority faults Taneceia Larry for the inadequacy of her brief on this appeal, yet, for reasons that elude me, gives

¶ 28. No one can dispute, and I certainly do not, the black-letter proposition that whether to grant relief under WIS. STAT. RULE 806.07(1)(h) is within the circuit court's discretion. But, other than *Gittel v. Abram*, 2002 WI App 113, 255 Wis. 2d 767, 649 N.W.2d 661 (where, unlike the situation here, the party benefiting from the circuit court's *sua sponte* modification of an order *appeared* in the lawsuit—2002 WI App 113, ¶ 1, 255 Wis. 2d at 773, 649 N.W.2d at 664), in all of the authorities relied upon by the Majority in upholding the circuit court's *sua sponte* grant of relief to Rutherford, circuit-court relief under RULE 806.07(1)(h) was *requested* by the party to whom the relief was given:

- *Richards v. First Union Secs., Inc.*, 2006 WI 55, ¶ 1, 290 Wis. 2d 620, 623, 714 N.W.2d 913, 915;

- *State ex rel. M.L.B. v. D.G.H.*, 122 Wis. 2d 536, 538, 363 N.W.2d 419, 420 (1985);

- *Shanee Y. v. Ronnie J.*, 2004 WI App 58, ¶ 1, 271 Wis. 2d 242, 247, 677 N.W.2d 684, 686;

- *Tridle ex rel. Shannon v. Horn*, 2002 WI App 215, ¶ 3, 257 Wis. 2d 529, 532–533, 652 N.W.2d 418, 420, *overruled on other grounds by Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶ 34, 273 Wis. 2d 76, 99, 681 N.W.2d 190, 201;

- *Davis v. City of Elkhorn*, 132 Wis. 2d 394, 397, 393 N.W.2d 95, 96 (Ct. App. 1986).

---

imprimatur to the circuit court's reward to Carlos Rutherford even though Rutherford thumbed his nose at Larry, the law, and the circuit court by not appearing before the circuit court. In my view, Rutherford's not appearing before the circuit court, either by counsel or *pro se*, to defend himself is worse than the deficiencies in Larry's appellate brief, and her brief in opposition to the circuit court's grant to Rutherford of what I see as unwarranted *and unprecedented* relief.

¶ 29. The Majority's message to those served with legal process is clear: you are free to ignore the law that says you must answer a properly served summons and complaint, WIS. STAT. RULES 801.09, 801.095, & 802.06(1), and you may win the lawsuit anyway. In my view, that is inconsistent with precedent and wrong as a matter of policy. I would reverse and remand to the circuit court for its ascertainment of damages. *See* WIS. STAT. RULE 806.02(2) (prove-up).