MAXCY, Appellant, vs. SIMONSON and others, Respondents. SIMONSON, Respondent, vs. MAXCY, imp., Appellant.

*January 30—February 19, 1907.*

*Tax titles: Sales to prohibited officers: Evidence: Findings: Purchase of tax certificates or tax title from county: Sales at discount: Right of tax-title claimant to face of tax certificate and interest.*

1. A conveyance of a tax title by the county is not to be held void within the prohibitions of sec. 1143, Stats. 1898 (providing that certain county officers shall not make any purchase, directly or indirectly, of any tax certificate or tax title held by the county), because a deputy county treasurer was interested in making the sale, where the court on sufficient evidence has found that such officer was not interested in the purchase.

2. In an action by the original owner to quiet title as against a tax-title claimant it is not error, under the provisions of sec. 1210*h*, Stats. 1898, to require the original owner to pay the face value of the tax certificates and interest from the time the tax-title claimant acquired them, or from the time he received conveyance from the county of the title acquired by the county

under them. It is not the purpose of the statute to enable the original owner to escape paying a portion of his taxes by reason of the county having sold its tax certificates at less than their face value.

3. Under sec. 1210h, Stats. 1898, in an action to set aside a tax deed, the court adjudged that the tax deed was void, that the original owner be barred unless within the time allowed he pay into court, for the use of the tax-title claimant, the face of the tax certificate on which the deed was based and the face of all subsequent tax certificates, with interest, and upon such payment that the title to the lands in question be established in the original owner, and awarded a judgment for costs in favor of the tax-title claimant. *Held*, that the judgment for costs was premature and erroneous.

APPEAL from a judgment of the circuit court for Bayfield county: JOHN K. PARISH, Circuit Judge. *Reversed.*

It appears from the record and is undisputed that two actions were commenced by the respective parties on or about May 1, 1902, and after issues were joined therein they were consolidated into one action and tried together. Action No. 1 was commenced by *Maxcy,* as owner in fee of the premises described, against *Simonson, Sowder,* and *Axelberg* to quiet title pursuant to sec. 3186, Stats. 1898. The defendant *Simonson* separately answered in that action, claiming title under a tax deed to the county executed May 11, 1900, for the taxes of 1895 and sale of 1896, which tax deed was recorded May 11, 1900, and a quitclaim deed to him from the county, recorded September 17, 1900, and also under a tax deed issued to *Simonson* March 5, 1902, and recorded March 6, 1902, for the taxes of 1896 and sale of 1897, and that *Simonson* also held certain tax certificates on the sale of the lands for the taxes of the years 1897, 1898, and 1899. The defendants *Sowder* and *Axelberg* separately answered by way of a general denial and asked that the action be dismissed with costs as to him. The other action, No. 2, was commenced on or about May 1, 1902, by *Simonson* as owner and holder of such tax deeds and certificates and quitclaim deed,

against said *Maxcy*, claiming title under the original owner
and against said *Sowder* and *Axelberg*, who were brought
into the case by order of the court for the purpose of barring
them and all persons claiming under them of all right, title,
interest, or claim in or to said lands or any part thereof, pur-
suant to secs. 1197–1210, inclusive, Stats. 1898. The defend-
ant *Maxcy* separately answered in that action, claiming title
under the original owner, and alleging that the quitclaim
deed from the county to *Simonson* was illegal and void for
the reason that *Axelberg* was deputy county treasurer and an
interested party in the lands and said purchase of the same,
contrary to the statute in such case made and provided; that
*Axelberg* was still one of the owners of said lands, and that
he and *Sowder* held the title to the same in the name of
*Simonson*. *Maxcy* also alleged in said answer that said tax
deeds, respectively, were illegal and void for several reasons
stated in said answer. By way of counterclaim said *Maxcy*
alleged that he was the owner in fee simple of the premises
described and in actual possession and occupancy thereof;
prayed judgment that such tax deeds and tax certificates
should be adjudged null and void and that *Simonson* take
nothing by his action, and for costs; that his claim be estab-
lished as against the claim of *Simonson;* that *Simonson* be ·
forever barred from having or claiming any right or title to
said lands adverse to said *Maxcy,* and that *Simonson* be ad-
judged to release to *Maxcy* all claim to said lands and pay
the costs of the action. *Simonson* replied, denying each and
every allegation of such counterclaim. *Sowder* and *Axelberg*
separately answered to the effect that they made no claim to
the lands described in the complaint of *Simonson,* and put in
a general denial of the allegations therein contained.

The two actions being so at issue and consolidated and tried
as one action, the court at the close of the trial found as
matters of fact, in effect, (1) that all the allegations of *Si-
monson's* complaint are proven and true and all the allega-

tions of his answer are proven and true; (2) that all the allegations of the answers of *Sowder* and *Axelberg* are proven and true; (3) that *Maxcy* is the owner of the original title of the lands described; (4) that *Simonson* claims title to said lands under and by virtue of said two tax deeds and said tax certificates; (5) that the tax deed of May 11, 1900, was based on the taxes of 1895 and the tax certificates on the sale of 1896, aggregating $85.11, and recorded as mentioned; (6) that the tax certificates for the taxes of 1896 and sale of 1897 amounted in the aggregate to $44.44, for the taxes of 1897 and sale of 1898 amounted in the aggregate to $48.61, for the taxes of 1898 for the sale of 1899 amounted in the aggregate to $60.25, and for the taxes of 1899 for the sale of 1900 amounted in the aggregate to $56.92; (7) that September 1, 1900, all of said tax certificates were for value duly sold, assigned, and transferred to *Simonson;* (8) that the tax deed of March 5, 1902, was based on the tax certificates of the sale of 1897, in the aggregate $44.44, and was recorded as mentioned; (9) that *Simonson* is now, and ever since said assignment of said certificates to him as mentioned has been, the lawful owner and holder of the same, except the certificates on the sale of 1897, in which the second tax deed was issued; (10) that after the execution of the first tax deed and on September 17, 1900, the county by quitclaim deed conveyed the lands described to *Simonson* and the same was recorded as mentioned; (11) that both of said tax deeds and all of said tax certificates are illegal and void for errors and irregularities not going to the groundwork of the tax on which the same were based; (12) that all the allegations in both the complaint and answer of *Maxcy* are unproven and untrue, except in relation to the illegality of said tax deeds for errors and irregularities not going to the groundwork of the tax on which the same were based; (13) that due notice of the pendency of the action commenced by *Simonson* was filed May 26, 1902.

As conclusions of law the court found, in effect, (1) that *Simonson* is entitled to judgment against *Maxcy*, and that *Maxcy* and all persons claiming under him since filing the notice of *lis pendens* be barred of all right, title, interest, or claim in or to the lands described, *unless* said *Maxcy* pay into court for the use of *Simonson*, within thirty days from service of notice of the entry of these findings, the amount of the tax certificates upon which the first tax deed was based, with interest thereon from September 17, 1900, at the rate of fifteen per cent. per annum until paid, and also the total and aggregate amount of all said tax certificates so assigned to said *Simonson* by the county, with interest thereon at the rate of fifteen per cent. per annum from September 1, 1900, until said money is so paid; (2) that upon payment of said sum by *Maxcy* all right and title in said lands be established in said *Maxcy*; (3) that *Simonson, Axelberg,* and *Sowder* are severally entitled to their costs and disbursements herein against *Maxcy*.

Thereupon, and on motion of *Simonson's* attorney and pursuant to such findings of fact and conclusions of law, judgment was entered by the clerk, wherein it is ordered and adjudged, in effect, (1) that *Maxcy* and all persons claiming under him since May 26, 1902, be barred of all right, title, interest, or claim in and to said lands or any part thereof, *unless Maxcy* pay into court for the use of *Simonson*, within thirty days from the entry and notice of the findings, the said sum of $85.11, with interest thereon from September 17, 1900, at fifteen per cent. per annum until so paid, also the total and aggregate amount of all said tax certificates, amounting to $210.02, with interest thereon from September 1, 1900, until said money be so paid; (2) that upon the payment of said sums by *Maxcy* all right and title in and to said lands be established in *Maxcy*; (3) that *Simonson* do have and recover of *Maxcy* his costs and disbursements taxed at $98.41. It is therein further ordered and adjudged that *Axelberg* and

*Sowder,* respectively, do have and recover of *Maxcy* his costs and disbursements in this action taxed at the sum of ———— dollars, but the same were not taxed.

From such judgment so entered by the clerk *Maxcy* appeals.

*A. W. McLeod,* for the appellant.

*John Walsh,* for the respondents.

CASSODAY, C. J. 1. It is claimed that the sale from the county to *Simonson* was void because the deputy county treasurer, *Axelberg,* was interested in making the sale. This contention is based upon the statute which prohibited such deputy from making any purchase, directly or indirectly, at any tax sale, or to purchase any tax certificate or tax title held by the county. Sec. 1143, Stats. 1898. It is enough to say that the trial court found that *Axelberg* was not so interested in making such purchase, and the evidence is sufficient to support such finding.

2. It is claimed by counsel that the amount which the court required *Maxcy* to pay into court as a condition of relief from the tax deed and tax certificates held by *Simonson* was excessive and not authorized by the statute. It was found by the court and conceded by counsel that the tax deed was illegal and void for errors and irregularities not going to the groundwork of the tax on which the same was based. Both parties cite and apparently rely upon the same section of the statute (sec. 1210*h,* Stats. 1898). The portion of that section applicable to this case states that the party claiming under the original title, "if he show himself otherwise entitled to judgment, shall, *before* the entry thereof, within a reasonable time to be fixed by the court, pay into court for the person or persons claiming under such tax sale *or* tax certificate the amount for which such land *was sold, and the amount paid* by such person or persons *for taxes levied* upon the premises *subsequent* to such sale, with interest on *all such*

*amounts* at the rate of fifteen per cent. per annum from the
*times* of payment until the said money *be so paid into court;*
and in default of such payment within the time so fixed the
defendant [tax-title claimant] shall have judgment in the
action." Counsel on each side cite and seemingly rely on
*Blackman v. Arnold,* 113 Wis. 487, 492, 493, 89 N. W.
513, in support of their construction of the language quoted.
In that case the land was sold May 15, 1894, for delinquent
taxes of 1893, and was bid in by the county at the tax sale.
On January 6, 1895, the tax certificate given on that sale was
purchased by and delivered "to Webb on payment of the *face
amount* of such certificate." The only controversy in that
case was whether the defendant, claiming title under the orig-
inal owner through the foreclosure sale, was required by the
statute quoted "to pay interest on the amount of the 1894
certificate from its date, May 15, 1894, instead of from the
time Webb paid the county therefor, January 6, 1895, the ex-
cess being $9.95," and it was held that the interest should be
reckoned from said last-mentioned date. In the case at bar
the original owner of the lands failed to pay the taxes as-
sessed thereon for the years 1896, 1897, 1898, and 1899, and
they were sold in due course to Bayfield county; and the cer-
tificates on such sales were duly assigned and transferred
by the county to *Simonson* September 1, 1900. In harmony
with the ruling of the court in *Blackman v. Arnold, supra,*
the trial court, as one of the conditions of relief, required
*Maxcy* to pay into court for the use of *Simonson* the total and
aggregate amount of all of said tax certificates so assigned to
*Simonson,* "with interest thereon at the rate of fifteen per
cent. per annum *from the date of such assignments,* Septem-
ber 1, 1900, until said money be so paid." And so the trial
court, as one of the conditions of relief from said tax deed
and tax certificates, required *Maxcy* to pay into court for the
use of *Simonson* the amount of the tax certificates upon which
said first tax deed was based, together with interest thereon

Maxcy v. Simonson, 130 Wis. 650.

at fifteen per cent. per annum from the time *Simonson* procured a quitclaim deed from the county, September 17, 1900, until said money be so paid. The correctness of such requirement as to the tax deed seems to be conceded. The contention is that *Maxcy* should only have been required to pay into court, as a condition of relief from said tax deed and tax certificates, $100, which was the amount which *Simonson* paid the county for the quitclaim deed September 17, 1900, and interest thereon at the rate of fifteen per cent. per annum from that date to the time of payment. No authority is cited on either side of the question so presented. The language of the statute quoted furnishes some plausibility to the contention. As indicated, the requirement to "pay into court," in case a tax deed has been taken, "the amount for which such land was sold," manifestly refers to the tax sale and the amount for which the tax certificate was issued, with interest as stated in the statute; and that is so even where the land has been bid in by the county' and no money has in fact been paid. So it is manifest that such interest is to be added to "the amount paid . . . for taxes levied . . . subsequent to such sale . . . from the times of payment until the said money be so paid into court." The same is true as to the purchase of tax certificates of sale at their face value, as in *Blackman v. Arnold,* 113 Wis. 487, 89 N. W. 513. The question that here confronts us is whether the same is true where tax certificates are purchased at a discount, as in the case at bar. In view of the fact that the amount of the tax is never anything more than a very small per cent. of the value of the property upon which it has been assessed, can it be assumed that in enacting the statute in question the legislature had in contemplation that tax certificates would be sold for less than their face value? This court held long ago that the performance of an agreement by a county to sell its tax certificates for an exceedingly low and nominal value might be enjoined at the suit of a taxpayer of

the county. *Willard v. Comstock,* 58 Wis. 565. See *Webster v. Douglas Co.* 102 Wis. 181, 189, and cases there cited. Had the owner of the lands in question attempted to redeem the same, he would, of course, have been compelled to pay the full face value of such tax certificates, with interest at the rate mentioned from the respective dates of such certificates. Sec. 1165, Stats. 1898. The manifest purpose of the statute in question is to secure the early payment of taxes by the owners of lands, and to compel those who neglect paying their taxes to proceed with promptness in case they desire to contest the validity of such tax sales. It certainly was not the purpose of the statutes to enable such owners to escape paying a portion of their taxes by reason of the county having sold its tax certificates at less than their face value. We find no error in the findings of fact in the particulars mentioned.

3. Error is assigned because the judgment entered by the clerk of the court adjudges costs and disbursements against *Maxcy* and in favor of the other parties, which costs and disbursements are taxed in favor of *Simonson* at $98.41. Such judgment is conditional and certainly premature and erroneous. The statute quoted expressly required that the moneys to be paid into court should be so paid "before the entry" of judgment in favor of the original owner; "and in default of such payment within the time so fixed the defendant [tax-title claimant] shall have judgment in the action." Thus it appears that the character of the judgment to be entered and the party in whose favor the same is to be entered depend upon whether the required amounts shall be so paid into court—a fact which the record fails to disclose has been determined. The findings and judgment seem to have substantially disposed of the merits, but they left a "condition to be performed in order fully to determine the rights of the parties," and hence the judgment was, at most, merely interlocutory. Sec. 2883, Stats. 1898. The proceedings in such cases are quite similar to those in ejectment under sec. 3087,

Stats. 1898, where tax titles are defective. One of the consolidated actions was brought by the landowner to quiet title pursuant to sec. 3186 of the Statutes. Had he substantiated his title under that section he would have been entitled to costs, because none of the defendants therein "disclaimed all title to such land" nor gave any "release thereof." Besides, such tax deed and all of said tax certificates were held to be illegal and void, and so the tax-title claimant failed. We must hold that the judgment so awarding costs is erroneous and contrary to the statutes in the particulars mentioned.

No other question requires consideration.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded for further proceedings according to law.