Taneceia LARRY,
Plaintiff-Appellant-Petitioner,

v.

Derrick L. HARRIS,
Defendant,

Carlos RUTHERFORD,
Defendant-Respondent,

ABC INSURANCE CORPORATION and Officer John Roe,
Defendants.

Supreme Court

*No. 2005AP2935. Oral argument January 17, 2008.
—Decided July 9, 2008.*

2008 WI 81

(Also reported in 752 N.W.2d 279.)

For the plaintiff-appellant-petitioner there were briefs by *Robert J. Kasieta* and *Kasieta Legal Group, LLC,* Madison, and *A. Steven Porter* and *A. Steven Porter,* Madison, and oral argument by *A. Steven Porter.*

For the defendant-respondent there was a brief by *Jonathan Cermele, Rachel L. Pings,* and *Cermele & Associates, S.C.,* Milwaukee, and oral argument by *Rachel L. Pings.*

An amicus curiae brief was filed by *Anne Berleman Kearney, Joseph D. Kearny,* Milwaukee, and *Thomas L. Shriner, Jr.,* Milwaukee, on behalf of themselves as members of the Wisconsin State Bar.

¶ 1. PATIENCE DRAKE ROGGENSACK, J. We review a decision of the court of appeals[1] affirming the circuit court's[2] sua sponte vacation of a default judgment against defendant Carlos Rutherford and the circuit court's sua sponte grant of judgment in Rutherford's favor. We conclude that the circuit court did not erroneously exercise its discretion in vacating the default judgment because Wis. Stat. § 806.07(1) (2005–06)[3] permits a court to grant relief from a judgment or an order. However, we also conclude that the circuit court did err when it sua sponte granted summary judgment in Rutherford's favor because it failed to give the prior notice required by Wis. Stat. § 802.08(2).

[1] *Larry v. Harris,* 2007 WI App 132, 301 Wis. 2d 243, 733 N.W.2d 911.

[2] The Honorable Daniel A. Noonan of Milwaukee County presided.

[3] All subsequent references to the Wisconsin Statutes are to the 2005–06 version, unless otherwise noted.

Accordingly, we reverse and remand the cause to the circuit court for further proceedings consistent with this opinion.

## I. BACKGROUND

¶ 2. The issues this case presents stem from law enforcement's entry into Taneceia Larry's home without a search warrant. Three officers were alleged to be present during the entry: Derrick Harris, M'Johno Foster and Carlos Rutherford.[4] Harris was named in the complaint, and the circuit court granted his motion for summary judgment dismissing Larry's claims, which Larry did not appeal. Foster was never sued. Rutherford also was a named defendant, but he did not appear or otherwise answer in the circuit court. The circuit court originally granted default judgment against Rutherford, but later vacated that order and granted judgment in his favor. Larry appeals the vacating of the judgment against Rutherford and the entering of judgment in his favor.[5]

---

[4] Harris and Rutherford are mentioned by name in Larry's complaint. Foster is referred to as a third officer present, but not by name. In contrast to the complaint, which alleges that three officers were present, the respective affidavits of Harris and Foster aver that they were the only two officers present during the search.

[5] Many facts underlying this appeal are disputed, but their irresolution is inconsequential for purposes of this appeal, because we are not considering the merits of Larry's claims. Rather, we are considering only whether the circuit court erroneously exercised its discretion. Nevertheless, in our presentation of the facts, we adhere to the law governing how they are to be viewed on a review of summary judgment. As a review of a summary judgment requires, we consider the disputed "facts in the light most favorable to the non-moving party." *See,*

¶ 3. On the evening of August 26, 2002, while Larry was at a gas station, she met a man whom she knew.[6] He requested a ride home, and Larry agreed to drive him as far as her house. They proceeded to Larry's home, and as Larry pulled into the drive-way, she noticed an unmarked police vehicle pull up behind her. Upon observing the presence of police, Larry's passenger fled from her vehicle. Two police officers[7] exited their car and gave chase, but they did not catch him.

¶ 4. The officers returned to Larry's residence, where Larry awaited them outside. Larry consented to a search of her car. The officers found no contraband, but Larry alleges that the officers then placed her in handcuffs. One of the officers said he intended to enter Larry's home. Larry objected. She said that her five children were in the house, some of whom were asleep, and that her niece was watching them. Larry alleges that two of the officers entered her home over her objection. She also alleges that the officers conducted a search inside her home, which included waking and "interrogating" the children and their babysitter. She further alleges that Rutherford "either participated in [the] search or was present" during the search, but failed to stop its occurrence.

---

e.g., *DeHart v. Wis. Mut. Ins. Co.*, 2007 WI 91, ¶ 7, 302 Wis. 2d 564, 734 N.W.2d 394. However, because neither Rutherford nor Larry moved for summary judgment, this review lacks a non-moving party.

[6] The man has not been identified.

[7] The complaint implicates the actions of three officers, but does not make clear which two officers pursued Larry's passenger. Nor does the complaint make clear which of the officers among the three alleged to be present performed the subsequent actions described.

¶ 5. For their part, Harris and Foster assert that only Foster, who was never a party to this suit, entered Larry's home. He did so without a warrant. Foster averred that he was in the home for less than five minutes, and that he entered only to ensure that some-one of suitable age was there to look after the children because Larry was going to be taken to the police station for questioning.[8] The circuit court found that ensuring proper child supervision was the purpose of the entry.[9] Foster additionally stated that he spoke to an individual whom he estimated to be 16 or 17 years old, but he did not say whether he spoke to any of the children.

¶ 6. Larry moved for default judgment when nei-ther Harris nor Rutherford timely answered her com-plaint. The circuit court denied the motion with respect to Harris after he objected and served an answer. However, the circuit court granted Larry's motion for default judgment against Rutherford.

¶ 7. Harris then moved for summary judgment against Larry, contending that the entry into Larry's

---

[8] Apparently, a drug buy occurred when Larry was at the service station. The officers' subsequent questioning of Larry caused them to believe she had no involvement in it.

[9] The court of appeals opinion appears to state as fact that "[t]he officer who entered [Larry's home], looked at pictures, opened doors, woke the children and asked them questions, and also questioned the babysitter." *Larry,* 301 Wis. 2d 243, ¶ 2. We note, however, that the circuit court made no such finding of fact. Although the circuit court, in its decision granting summary judgment, presented these events as allegations made by Larry, it did not find that they actually occurred. In his affidavit, Foster contests Larry's allegation, asserting that he "did not touch anything in the home and I did not open any drawers or doors on any of the furnishings in the home." Later in its opinion, the court of appeals acknowledges Foster's assertion in this respect. *Id.,* ¶ 5.

home was lawful and that qualified immunity protected him from liability. In opposing Harris's motion for summary judgment, Larry argued that because her home was entered by police without either a warrant or reasonable suspicion, the entry was presumptively unlawful. Moreover, she contended that Harris's affirmative defense of qualified immunity was frivolous.

¶ 8. The circuit court granted Harris's motion for summary judgment. Because the circuit court concluded that actions on the part of Harris, Foster and Rutherford all fell within the scope of Harris's motion for summary judgment, the court "treated [them] in the same manner." The court found that, although police officers entered Larry's home without her consent and without a warrant, they did so for the purpose of ensuring that her children were adequately supervised and not for the purpose of uncovering "evidence or . . . criminal activity."

¶ 9. However, in granting summary judgment to Harris and without giving prior notice to Larry, the circuit court also, sua sponte, vacated the default judgment against Rutherford and granted judgment dismissing Larry's claims against Rutherford.[10] Larry moved the circuit court to reconsider the vacation of the default judgment, as well as the dismissal of her claims against Rutherford.

---

[10] The nature of the dismissal of Larry's claim against Rutherford is not clear, i.e., the circuit court did not say it was granting "summary judgment" in favor of Rutherford. However, Larry characterizes the circuit court's action as granting Rutherford summary judgment. Rutherford does not dispute that characterization. Accordingly, we address it as though the circuit court granted summary judgment dismissing Larry's claims against Rutherford.

¶ 10. The circuit court invited briefing on Larry's motion to reconsider. Larry's brief in support of her motion consisted of a six-sentence letter, two sentences of which addressed her argument:

> The court will recall we are asking your Honor to reconsider an order in which the court, *sua sponte,* ordered the reopening of the previously-entered Default Judgment and Summary Judgment against the Plaintiff in favor of the defaulting Defendant, all without any argument from the defaulting Defendant.
>
> We can find no support for this procedure and respectfully request that it be reversed.

Larry also subsequently submitted a reply brief, arguing, in essence, that the circuit court erred by ascribing the qualified immunity that it concluded Harris possessed to Rutherford as well.

¶ 11. The circuit court denied Larry's motion for reconsideration. The court explained its reasoning in vacating the default judgment against Rutherford and in dismissing Larry's complaint as to all officers:

> [T]he Court found that the default judgment should be vacated against Defendant Rutherford because no reason existed to hold any officer liable for violation of [Larry's] constitutional rights under her Complaint. ... The vacation occurred here within a reasonable time after default because the summary judgment was before the Court and the Court determined the claims by Plaintiff were improper. ...
>
> ... Plaintiff does not dispute the Court's findings that her rights under the constitution were not violated. Clearly, the Court vacated the default because no officer could be held liable under the Complaint according to the Court's findings; as such, the interests of justice required the Court to vacate the default.

¶ 12. Larry did not further dispute the circuit court's grant of summary judgment with respect to Harris, nor the basis for that decision, i.e., that Larry's constitutional rights were not violated and that the doctrine of qualified immunity applies. Larry appealed the vacation of the default judgment, as well as the entry of judgment in Rutherford's favor based on Rutherford's failure to appear in the circuit court.

¶ 13. The court of appeals affirmed. It reasoned that a circuit court has statutory authority to grant relief from default judgments on its own motion, so long as it provides the party adversely affected with notice and an opportunity to be heard. *Larry v. Harris,* 2007 WI App 132, ¶ 1, 301 Wis. 2d 243, 733 N.W.2d 911. The court of appeals also concluded that by inviting briefing on Larry's motion to reconsider, the circuit court gave Larry sufficient notice and an opportunity to be heard. *Id.* The court of appeals decision did not address the circuit court's summary judgment decision.

¶ 14. Larry petitioned for review, which we granted.

## II. DISCUSSION

### A. Standard of Review

¶ 15. Whether to open a default judgment is committed to the discretion of the circuit court, which we review under the erroneous exercise of discretion standard. *See, e.g., Edland v. Wis. Physicians Serv. Ins. Corp.,* 210 Wis. 2d 638, 643, 563 N.W.2d 519 (1997); *Dugenske v. Dugenske,* 80 Wis. 2d 64, 68, 257 N.W.2d 865 (1977). A circuit court does not erroneously exercise its discretion if its decision is based on the facts of record and on the application of a correct legal stan-

dard. *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981).

▆

¶ 16. A circuit court's authority to vacate a default judgment and to grant summary judgment derives from Wisconsin statutes. Wis. Stat. §§ 806.07 and 802.08. We review questions of statutory interpretation independently, but benefiting from the discussions of the circuit court and the court of appeals. *Marder v. Bd. of Regents of the Univ. of Wis. Sys.,* 2005 WI 159, ¶ 19, 286 Wis. 2d 252, 706 N.W.2d 110.

B. Wisconsin Stat. § 806.07

1. Opening the default judgment

¶ 17. A circuit court's authority to open a default judgment is derived from statute. Wis. Stat. § 806.07. Section 806.07(1) lists conditions under which a circuit court may exercise its discretion and open a default judgment. It provides:

> Relief from judgment or order. (1) On motion and upon such terms as are just, the court, subject to subs. (2) and (3), may relieve a party or legal representative from a judgment, order or stipulation for the following reasons:
>
> (a) Mistake, inadvertence, surprise, or excusable neglect;
>
> (b) Newly-discovered evidence which entitles a party to a new trial under s. 805.15(3);
>
> (c) Fraud, misrepresentation, or other misconduct of an adverse party;
>
> (d) The judgment is void;

(e) The judgment has been satisfied, released or discharged;

(f) A prior judgment upon which the judgment is based has been reversed or otherwise vacated;

(g) It is no longer equitable that the judgment should have prospective application; or

(h) Any other reasons justifying relief from the operation of the judgment.

■

¶ 18. We have previously recognized that Wis. Stat. § 806.07 seeks to strike a balance between the judiciary's interest in achieving fair resolutions of disputes and the policy favoring finality of judgments. *Edland*, 210 Wis. 2d at 644. Indeed, § 806.07 serves both interests, enhancing "fairness in the administration of justice by authorizing a circuit court to vacate judgments on various equitable grounds." *Id.*

¶ 19. Here, the circuit court vacated the judgment against Rutherford on its own motion under Wis. Stat. § 806.07 on equitable grounds, but without prior notice to the parties that it was considering such relief from judgment. Our first tasks are to determine whether: (1) the court's sua sponte vacation of Rutherford's default judgment, and (2) the court's providing an opportunity for the parties to be heard after it had vacated the judgment, rather than before it did so, constituted proper exercises of discretion.

a. Sua sponte vacation of default judgment

■

¶ 20. The relief that may be accorded under Wis. Stat. § 806.07 need not be sought by one of the parties; a court may act on its own motion pursuant to § 806.07,

as long as the court provides the parties notice of its action and an opportunity to be heard. *Gittel v. Abram,* 2002 WI App 113, ¶ 27, 255 Wis. 2d 767, 649 N.W.2d 661. In *Gittel,* Nickolas Persha executed a will naming Ruth Abram, who was also Persha's personal representative in the probate proceedings, as his sole beneficiary. *Id.,* ¶ 1. Persha's sister, Mary Gittel, challenged the will, arguing in part that the will was invalid because it was the product of Abram's undue influence. *Id.* Because the circuit court concluded that the will was tainted by undue influence and that the testator was incompetent, it refused to probate the will. *Id.,* ¶¶ 7–8.

¶ 21. Abram objected to the court's award of costs and fees to Gittel, and the court held a hearing on Abram's motion. *Id.,* ¶¶ 8, 10. At the hearing and without prior notice to the parties that it planned to do so, the court vacated the portion of its order that declared the will the product of undue influence. *Id.,* ¶ 11. Gittel filed a motion for reconsideration, which the court denied, indicating that it had the authority to vacate its original order pursuant to Wis. Stat. § 806.07(1)(h). *Id.,* ¶ 13.

¶ 22. The court of appeals held in *Gittel* that a circuit court is authorized to grant relief from its own orders sua sponte under the authority of Wis. Stat. § 806.07, but that the circuit court did not provide the parties with the requisite notice of its action. *Id.,* ¶¶ 24, 29. The court of appeals explained, "Gittel did not have notice and the opportunity to be heard on the specific issue of the court's authority under Wis. Stat. § 806.07, because the court did not refer to § 806.07 until the written order denying Gittel's motion for reconsideration without a hearing."[11] *Id.,* ¶ 29.

---

[11] The court ultimately concluded, however, that Gittel was not prejudiced by the circuit court's action. It so concluded

¶ 23. We agree with *Gittel* that circuit courts are vested with the authority to grant relief from their judgments, on their own motion under Wis. Stat. § 806.07. We have recognized a wide swath of contexts in which Wisconsin courts are permitted to act on their own motion. *See, e.g., Howell v. Denomie,* 2005 WI 81, ¶ 19, 282 Wis. 2d 130, 698 N.W.2d 621 (concluding that the court of appeals may inquire, on its own motion, whether a frivolous claim has been filed); *City of Sun Prairie v. Davis,* 226 Wis. 2d 738, ¶ 19, 595 N.W.2d 635 (1999) (recognizing the inherent power of courts to vacate void judgments); *State v. Peterson,* 104 Wis. 2d 616, 628, 312 N.W.2d 784 (1981) (holding that a circuit court may amend pleadings on its own motion); *State v. Hanson,* 85 Wis. 2d 233, 237, 270 N.W.2d 212 (1978) (stating that a circuit court "may on its own motion reopen [a case] for further testimony in order to make a more complete record in the interests of equity and justice"); *Behning v. Star Fireworks Mfg. Co.,* 57 Wis. 2d 183, 188, 203 N.W.2d 655 (1973) (concluding that circuit courts may, on their own motion, grant a new trial in the interests of justice).[12] The wide recognition of courts' abilities to act sua sponte comports with the

because Gittel did not identify any argument regarding the circuit court's authority that she could have made to the circuit court that she could not make on appeal. *Gittel v. Abram,* 2002 WI App 113, ¶ 29, 255 Wis. 2d 767, 649 N.W.2d 661.

[12] We note, as well, that we have previously observed that a circuit court "apparently has authority to rescind at least part of its order and decision under Wis. Stat. § 806.07(1)(h) as long as both parties have adequate notice." *State v. Morford,* 2004 WI 5, ¶ 55 n.45, 268 Wis. 2d 300, 674 N.W.2d 349. Although this statement from *Morford* is not controlling, it is informative for purposes of our decision.

balance of the interests served by § 806.07, fairness and finality. Indeed, as we have stated, "Every court has inherent power, exercisable in its sound discretion, consistent within the Constitution and statutes, to control disposition of causes on its docket with economy of time and effort." *Neylan v. Vorwald,* 124 Wis. 2d 85, 94, 368 N.W.2d 648 (1985). "That a court should raise issues sua sponte is the natural outgrowth of the court's function to do justice between the parties." *State v. Holmes,* 106 Wis. 2d 31, 39, 315 N.W.2d 703 (1982).

¶ 24. In addition, the plain language of Wis. Stat. § 806.07(1) does not foreclose the court from acting sua sponte under the statute's authority. When interpreting a statute, we look to its language, and if that language conveys a "plain, clear statutory meaning," we construe the statute according to that meaning. *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110 (quoting *Bruno v. Milwaukee County,* 2003 WI 28, ¶ 20, 260 Wis. 2d 633, 660 N.W.2d 656). Section 806.07(1) provides in part: "On motion and upon such terms as are just, the court[] . . . may relieve a party . . . from a judgment . . . ." Because the language of the statute provides that a court may relieve a party from judgment, without qualifying that the relief may be granted only upon a motion brought by one of the parties, the statute does not restrict the court from acting on its own motion.

¶ 25. In sum, we reaffirm *Gittel's* conclusion that courts have the power to act sua sponte under the provisions of Wis. Stat. § 806.07. The interests underlying § 806.07 parallel the interests that we have held permit courts to act sua sponte. In addition, we con-

341

strue the plain language of § 806.07 to permit a court to act sua sponte under its authority.

b. Notice and hearing

¶ 26. As we recounted above, sua sponte actions are permissible under Wis. Stat. § 806.07(1) if the court provides the parties notice of its action and an opportunity to be heard. *Gittel,* 255 Wis. 2d 767, ¶ 27. The court in *Gittel* concluded that the circuit court had not provided the parties adequate notice when it vacated its initial order declaring that Persha's will was the product of undue influence. *Id.,* ¶ 29. The circuit court withdrew that portion of its order during a hearing on Abram's objection to the circuit court's assignment of costs. *Id.,* ¶¶ 8, 11. Abram's motion was grounded in the theory that the circuit court had erred in allocating costs because the court had erred in concluding that the will was the product of undue influence. *Id.,* ¶ 9. At the opening of the motion hearing, the circuit court asked Abram's attorney if he was requesting that the court reconsider the portion of its order relating to undue influence, and the attorney answered affirmatively. *Id.,* ¶ 10. The court of appeals concluded that, although the circuit court's question to Abram's counsel about undue influence gave Gittel's attorney some notice that it was perhaps reconsidering its previous order, Gittel had insufficient notice that the circuit court may vacate a portion of its order. *Id.,* ¶ 29. Gittel did not have notice that the circuit court was acting sua sponte pursuant to § 806.07 until the circuit court referred to § 806.07 in its denial of Gittel's motion for reconsideration. *Id.*

¶ 27. The facts here stand in sharp contrast to the facts in *Gittel.* Even though the circuit court acted on its own motion without prior notice to Larry or any defendant, as the circuit court had in *Gittel,* the circuit

court here, unlike the circuit court in *Gittel,* provided an opportunity for the parties to be heard by inviting briefing on the issues. Although giving notice prior to a sua sponte action by a circuit court under Wis. Stat. § 806.07 is preferable, Larry does not argue that she was prejudiced by the late notice.[13] Furthermore, she did submit a letter brief objecting to vacating the default judgment, as well as a more complete reply brief. The court considered her arguments and then issued a written opinion addressing them. Under these circumstances, the circuit court permitted Larry an opportunity to be heard.

¶ 28. In vacating the default judgment, the circuit court related that all the officers were accused of substantially the same conduct under the complaint. The court explained that given the summary judgment materials submitted in regard to Harris's motion for summary judgment, it was clear that Larry's rights had not been violated by the officers' conduct. The court opined that its decision to vacate the default judgment was based on equity, as it further explained, *"no officer could be held liable* under the Complaint according to the Court's findings; as such, *the interests of justice required* the Court to vacate the default." (Emphasis added.)

___

[13] Contrary to the concurrence/dissent's suggestion, we do not depart from the rule in *Gittel* requiring notice of a sua sponte action pursuant to Wis. Stat. § 806.07. Concurrence/dissent, ¶ 54. Notice is required; prior notice is preferable. Although the circuit court here did not give *prior* notice in regard to vacating the default judgment against Rutherford, the court did give an opportunity to fully address the vacation of the default judgment in regard to Rutherford upon Larry's motion for reconsideration. In addition, the court provided Larry with notice and an opportunity to be heard in advance of its hearing Harris's motion for summary judgment based on the same conduct as was alleged against Rutherford.

¶ 29. We see no erroneous exercise of discretion. The court had the power to act sua sponte under Wis. Stat. § 806.07, and it thoroughly explained the legal and equitable bases for its decision to vacate the default judgment. In addition, Larry was given an opportunity to be heard and the written decision of the circuit court shows it carefully considered her arguments. Accordingly, the circuit court did not erroneously exercise its discretion in sua sponte vacating the default judgment against Rutherford.

2. Larry's position

¶ 30. Larry advances two arguments in her opposition to the circuit court's vacation of the default judgment. First, although Larry acknowledges that the court's grant of default judgment was interlocutory rather than final, Larry maintains that the default judgment amounted to a finding that Rutherford was liable, entitling Larry to damages. Larry contends that she was entitled to rely on the court's order unless Rutherford appeared later and showed good cause or excusable neglect for failing to answer Larry's complaint. Second, Larry argues that the affirmative defense of qualified immunity that the circuit court ascribed to Rutherford is insufficient to qualify as an "extraordinary circumstance" required for relief from judgment under Wis. Stat. § 806.07(1)(h). Accordingly, Larry contends that the circuit court erroneously exercised its discretion by vacating a default judgment entered against a defendant who had not appeared and who had made no showing that extraordinary circumstances caused his failure to answer Larry's complaint. Neither argument is availing.

¶ 31. Larry's first argument is inherently contra-dictory. Because, as Larry concedes, the circuit court's order was interlocutory, Larry has no basis on which to claim that she was entitled to rely on the order of default judgment as one that would remain undisturbed unless Rutherford appeared to contest it. An interlocu-tory order may remain in doubt until judgment is final. *See Maxcy v. Simonson,* 130 Wis. 650, 658, 110 N.W. 803 (1907). For many years, Wisconsin law has defined an interlocutory order as one in which "the substantial rights of the parties involved in the action remain undetermined and [on occasion] when the cause is retained for further action." *Pasch v. DOR,* 58 Wis. 2d 346, 354, 206 N.W.2d 157 (1973).

¶ 32. Larry next argues that the affirmative de-fense of qualified immunity is insufficient to support relief from a default judgment under Wis. Stat. § 806.07(1)(h). Larry contends that, in the absence of any of the circumstances listed in subparts (a) through (f) of § 806.07(1) that permit relief to be granted, the circumstances here are not sufficiently "extraordinary" to permit Rutherford relief under subpart (h) alone. Larry asserts that *State ex rel. M.L.B. v. D.G.H.,* 122 Wis. 2d 536, 363 N.W.2d 419 (1985), requires courts reviewing decisions under subpart (h) to first determine whether the party seeking relief has asserted extraor-dinary circumstances, and, second, if so, to hold a hearing to determine whether the asserted extraordi-nary circumstances actually are present.

¶ 33. Larry's arguments are misplaced. She does not discern the difference between the order issued in *M.L.B.* and the order issued here. The holding in *M.L.B.* was predicated on a *final* decision of the circuit court,

not an interlocutory decision, as is the case here.[14] Accordingly, the two-part process described in *M.L.B.* does not apply here. Subpart (h) of Wis. Stat. § 806.07(1) permits a court to relieve a party from a judgment or an order for "[a]ny other reasons justifying relief from the operation of the judgment." As we have explained, the circuit court fully set out the circumstances that justified equitable relief from the default judgment.

¶ 34. Larry contests the circuit court's conclusion that Rutherford is protected by qualified immunity. She contends that the circuit court could not determine that Rutherford is protected by qualified immunity without the development of facts relating to Rutherford's participation in the entry into her home.

¶ 35. The circuit court concluded that the complaint alleged that all the officers were engaged in substantially the same conduct and that under the undisputed facts presented to the court at Harris's

[14] In *State ex rel. M.L.B. v. D.G.H.*, 122 Wis. 2d 536, 537, 363 N.W.2d 419 (1985), D.G.H. sought relief from an agreement that he had signed and that the court had accepted declaring him the father of M.L.B.'s child. *Id.* at 537–38. The court had submitted a final order adjudging D.G.H. as the father. *Id.* at 538, 544. D.G.H. was 18 years old at the time, was unemployed, was not represented by counsel and had no blood test taken to confirm his parenthood. *Id.* at 540–41. Four years later, D.G.H. discovered that M.L.B. had provided a state agency false statements that cast doubt about D.G.H.'s parenthood of her child. *Id.* at 541. In addition, a blood test revealed that D.G.H. was not the father. *Id.* We held that the false statements, which had induced D.G.H. to agree to be designated the father, along with the collection of other circumstances, constituted extraordinary circumstances that justified granting D.G.H. relief under Wis. Stat. § 806.07(1)(h). *Id.* at 553–54.

346

motion hearing, that conduct did not violate Larry's constitutional rights. The circuit court concluded that all of the officers' actions were discretionary and taken in the course of their official duties as community caretakers. Therefore, all of the officers were entitled to immunity as a matter of law. Accordingly, the facts were sufficiently established for the court to conclude that the doctrine of qualified immunity protected all of the officers from liability.

¶ 36. Furthermore, Larry does not contest that the entry into her home was lawful; nor does she contest that Harris and Foster are protected from liability by qualified immunity and the conduct ascribed to Rutherford in the complaint largely mirrored the conduct ascribed to Harris. Therefore, the circuit court did not erroneously exercise its discretion by vacating the default judgment against Rutherford, pursuant to Wis. Stat. § 806.07(1)(h), due to the common conduct from which the complaint arose.

C. Summary Judgment

¶ 37. We next consider whether the court properly granted judgment in favor of Rutherford dismissing Larry's complaint. We adhere to the very narrow formulation of this issue, as Larry presented it in her petition for review. The question we are asked to answer is as follows:

> When a default judgment has been granted against a defendant, no evidence has been developed or submitted regarding the defaulting defendant, the defaulting party has not moved for summary judgment, and the defaulting party has raised no affirmative defenses, can a trial court enter summary judgment in that defendant's favor?

¶ 38. Larry contends that the circuit court erred in granting summary judgment to Rutherford upon its own motion under these circumstances. In response, the State contends that Larry did not object before the circuit court and therefore the issue is waived.[15] In the alternative, the State contends that Rutherford's qualified immunity suffices to render the circuit court's grant of judgment in his favor appropriate. Under the very narrow focus of our review of this issue, we agree with Larry.

¶ 39. In Wisconsin, the availability of summary judgment is statutory. Wis. Stat. § 802.08. Statutory interpretation begins with the statute's language. *Kalal*, 271 Wis. 2d 633, ¶ 45. If the language of the statute is clear and its meaning is plain, then we apply that meaning to the controversy before us. *Id.* Section 802.08 provides in relevant part:

> (1) Availability. A party may, within 8 months of the filing of a summons and complaint or within the time set in a scheduling order under s. 802.10, move for summary judgment on any claim, counterclaim, cross-claim, or 3rd-party claim which is asserted by or

---

[15] We disagree with the State's assertion that Larry waived the argument that the circuit court erred in issuing summary judgment in Rutherford's favor. In support of her motion to reconsider, Larry wrote: "The court will recall we are asking your Honor to reconsider an order in which the court, sua sponte, ordered the reopening of the previously-entered Default Judgment and *Summary Judgment* against the Plaintiff in favor of the defaulting Defendant . . . ." (Emphasis added.) Larry objected to the entry of summary judgment before the circuit court and briefed the issue to the court of appeals. Accordingly, Larry preserved the issue for our review.

against the party. Amendment of pleadings is allowed as in cases where objection or defense is made by motion to dismiss.

(2) Motion. *Unless earlier times are specified in the scheduling order, the motion shall be served at least 20 days before the time fixed for the hearing* and the adverse party shall serve opposing affidavits, if any, at least 5 days before the time fixed for the hearing. (Emphasis added.)

¶ 40. It is significant that Wis. Stat. § 802.08(2) sets forth the procedural conditions for granting summary judgment. Unless a scheduling order specifies otherwise, § 802.08(2) mandates that a motion for summary judgment be served at least *20 days before* a hearing on that motion. In raising and granting summary judgment on its own motion, the circuit court did not provide the parties 20 days' advance notice of its motion, as required by § 802.08(2).[16]

¶ 41. State courts outside our jurisdiction have held that a trial court may grant summary judgment sua sponte, but only if the court adheres to the conditions under which summary judgment may be granted. *See, e.g., Awada v. Shuffle Master, Inc.,* 173 P.3d 707, 712 n.26 (Nev. 2007). The Nevada Supreme Court has observed that, although trial courts have the " 'inherent power to enter summary judgment *sua sponte,*' that power is subject to the requirements of [Nevada's rule for civil procedure governing summary judgment.]" *Id.* (quoting *Soebbing v. Carpet Barn, Inc.,* 847 P.2d 731, 735 (Nev. 1993)). Nevada's summary judgment civil procedure rule, Nev. R. Civ. P. 56(c), sets forth proce-

---

[16] This 20–day notice requirement is significantly different from Wis. Stat. § 806.07, which requires notice, but does not set a time prior to the hearing when notice must be given.

dural requirements that must be met before a court grants summary judgment.[17] Those procedural requirements include "the service of a motion, a response, and a minimum amount of time that must pass before a hearing on that motion can be conducted." *Id.*

¶ 42. In *Soebbing,* the Nevada Supreme Court held that the trial court erroneously exercised its discretion in granting summary judgment sua sponte, because it did not give the parties the requisite notice contained in Nev. R. Civ. P. 56(c). *Id.* at 735–36. After the defendant moved for summary judgment, the plaintiff moved to amend his first amended complaint. *Id.* at 733. The court granted the plaintiff's motion. *Id.* However, immediately thereafter, the court granted the defendant's motion with respect to the plaintiff's first amended complaint, and it, sua sponte, granted summary judgment on the plaintiff's yet-to-be-filed second amended complaint. *Id.* at 735. Because the trial court did not provide the plaintiff the full ten days' notice Nev. R. Civ. P. 56(c) requires before summary judgment may be granted, its sua sponte grant of summary judgment dismissing the plaintiff's second amended complaint constituted an erroneous exercise of discretion. *See id.* at 735–36.

¶ 43. A court's sua sponte grant of summary judgment without complying with the statutory prior notice requirement deprives parties of an opportunity to bring

---

[17] Rule 56(c) of Nev. R. Civ. P. provides in relevant part:

(c) Motion and Proceedings Thereon. The [summary judgment] motion shall be served at least 10 days before the time fixed for the hearing. Motions for summary judgment and responses thereto shall include a concise statement setting forth each fact material to the disposition of the motion which the party claims is or is not genuinely in issue, citing the particular portions of any pleading, affidavit, deposition, interrogatory, answer, admission, or other evidence upon which the party relies.

forth all of their evidence. *See, e.g., Del Hayes & Sons, Inc. v. Mitchell,* 230 N.W.2d 588, 591–92 (Minn. 1975). The circuit court in the case before us did not provide the parties 20 days prior notice, or otherwise provide the parties a scheduling order specifying a shorter time period within which it intended to decide whether to grant summary judgment, as Wis. Stat. § 802.08(2) requires. Instead, the circuit court granted summary judgment against Larry without prior notice. As a result, Larry was not apprised that she had to come forward with all of her evidence. Accordingly, because the circuit court's action in granting judgment in favor of Rutherford on its own motion was inconsistent with the 20–day prior notice required by Wisconsin's summary judgment statute, the circuit court erroneously granted summary judgment for Rutherford. *Accord, Soebbing,* 847 P.2d at 735–36.

¶ 44. Our decision should not be read to leave the circuit court hamstrung on remand, without any authority to grant judgment in favor of Rutherford. To the contrary, granting judgment in favor of Rutherford may be appropriate, given that Harris and Rutherford are the objects of substantially similar factual allegations invoking the same qualified immunity defense. However, we stress that in granting summary judgment, circuit courts must adhere to either the procedural requirements of Wis. Stat. § 802.08(2), for 20 days prior notice, or of a scheduling order specifying a shorter time period within which summary judgment may be granted.[18] Provided they adhere to the strictures of § 802.08(2), circuit courts have wide discretion to determine whether a plaintiff's claim can survive as a matter of law.

---

[18] Our decision does not prohibit Rutherford from filing a motion for summary judgment on remand.

## III. CONCLUSION

¶ 45. In sum, we conclude that the circuit court did not erroneously exercise its discretion in vacating the default judgment it had granted against Rutherford because Wisconsin's relief from judgment statute, Wis. Stat. § 806.07(1), permits such an action. However, we also conclude that the circuit court did err when it sua sponte granted summary judgment in Rutherford's favor because it failed to give the notice required by Wis. Stat. § 802.08(2).

¶ 46. Accordingly, we reverse and remand the cause to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶ 47. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). I agree with the majority opinion that "a court may act on its own motion pursuant to [Wis. Stat.] § 806.07, as long as the court provides the parties notice of its action and an opportunity to be heard."[1] I write separately because the majority opinion erroneously concludes that the circuit court in the instant case gave the plaintiff notice of its action and the opportunity to be heard when acting on its own motion under Wis. Stat. § (Rule) 806.07.

---

[1] Majority op., ¶ 20 (citing *Gittel v. Abram*, 2002 WI App 113, ¶ 27, 255 Wis. 2d 767, 649 N.W.2d 661).

I also agree with the majority opinion that the circuit court erroneously granted summary judgment on its own motion to the defendant Rutherford without complying with the procedural requirements under Wis. Stat. § 802.08(2). I do not address the summary judgment issue in this separate opinion.

¶ 48. The circuit court in the instant case acted "on its own motion under Wis. Stat. § 806.07 . . . without prior notice to the parties that it was considering such" action.[2] Because the circuit court did not give the plaintiff notice that the circuit court would act on its own motion under Wis. Stat. § 806.07 to vacate the order for a default judgment in the plaintiff's favor, the plaintiff obviously had no opportunity to be heard on the matter prior to the court's action. The circuit court granted the motion under Wis. Stat. § 806.07 at the same time that it raised it.

¶ 49. Although acknowledging that the circuit court failed to provide notice to the plaintiff and an opportunity to be heard prior to acting on its own motion under Wis. Stat. § 806.07, the majority opinion concludes that the circuit court (retroactively) supplied the requisite notice and opportunity to be heard when the plaintiff moved for reconsideration of the circuit court's decision and the circuit court invited briefs from the parties. Majority op., ¶ 27.

¶ 50. The plaintiff's opportunity to be heard upon her motion for reconsideration cannot substitute for an opportunity to be heard prior to the decision which the plaintiff moved the circuit court to reconsider. With respect to her motion for reconsideration, the plaintiff, as the moving party, carried a burden that she would not have carried if given a timely opportunity to be heard before the circuit court acted on its own motion under Wis. Stat. § 806.07.

¶ 51. I concur in the mandate, however, because I conclude that the circuit court's error is not prejudicial

---

[2] Majority op., ¶ 19. *See also* majority op., ¶ 27 ("[T]he circuit court acted on its own motion without prior notice to Larry or any defendant[.]").

under the circumstances of the instant case. I would follow *Gittel v. Abram,* 2002 WI App 113, 255 Wis. 2d 767, 649 N.W.2d 661, in which the court of appeals held that although the circuit court erred in failing to provide Gittel with notice and the opportunity to be heard on the issue of the court's authority under Wis. Stat. § 806.07, the circuit court's error was not prejudicial because the court of appeals reviewed all of Gittel's arguments de novo and decided them against Gittel.[3]

¶ 52. For the reasons set forth, I concur in the mandate but write separately.

¶ 53. LOUIS B. BUTLER, JR., J. (*concurring in part, dissenting in part*). I agree with the majority that the circuit court erred in sua sponte granting summary judgment in Rutherford's favor because it failed to give the notice required by Wis. Stat. §§ 806.07(1) and 802.08(2) before granting summary judgment to a defaulting party who never appeared in the action. *See* majority op., ¶¶ 23–26, 37–44. However, I disagree with the majority's holding that the circuit court did not also err in sua sponte vacating the default judgment against Rutherford pursuant to Wis. Stat. § 806.07(1), despite the lack of prior notice to the parties before vacating the default judgment. *See id.,* ¶¶ 20–29. With Rutherford never appearing as a party and no advance notice being given by the court prior to vacating the default judgment, I find the court's order vacating default judgment without prior notice to be just as erroneous as its order granting summary judgment without prior notice.

¶ 54. The majority correctly cites *Gittel v. Abram,* 2002 WI App 113, ¶ 27, 255 Wis. 2d 767, 649 N.W.2d 661, as holding that before a circuit court grants relief

---

[3] *See Gittel v. Abram,* 2002 WI App 113, ¶ 29, 255 Wis. 2d 767, 649 N.W.2d 661.

from its own orders sua sponte under Wis. Stat. § 806.07, it must provide parties with requisite notice of its actions, along with an opportunity to be heard. Majority op., ¶¶ 20, 22. However, I cannot go along with the majority's attempt to distinguish *Gittel* by contending that because in the case at hand Larry had an opportunity to be heard ex post facto, the requirements identified in *Gittel* were met. *See* majority op., ¶¶ 27–29.

¶ 55. The majority glosses over the fact that notice was not given by the judge before sua sponte vacating the default judgment. The majority states that "[a]lthough giving prior notice to a sua sponte action by a circuit court under Wis. Stat. § 806.07 is preferable, Larry does not argue that she was prejudiced by the late notice." Majority op., ¶ 27. This description of prior notice as merely "preferable" contradicts the majority's acknowledgement that notice is a requirement, with *Gittel* stating that "a court has the authority to raise an issue sua sponte if it gives the litigants notice that it is considering the issue and an opportunity to argue." *Gittel,* 255 Wis. 2d 767, ¶ 24 (citing *State v. Holmes,* 106 Wis. 2d 31, 40–41, 315 N.W.2d 703 (1982)). A requirement is not just "preferred." A requirement is required.

¶ 56. Furthermore, *Gittel* establishes that when a court acts on its own motion under Wis. Stat. § 806.07, "parties must have [*both*] notice *and* the opportunity to be heard." *Gittel,* 255 Wis. 2d 767, ¶ 27 (emphasis added). The majority incorrectly collapses these two requirements into one, arguing that because the parties in this case had what the majority describes as "opportunity to be heard," then the notice requirement was satisfied as well. *See* majority op., ¶ 27 & n.13.

¶ 57. Not only is this an incorrect articulation of the rule described in *Gittel,* but in attempting to distinguish *Gittel,* the majority misportrays the facts of both *Gittel* and the present case. The majority suggests that in this case, but not in *Gittel,* the parties were given the opportunity to brief the issue, which then sufficed as notice. Majority op. ¶ 27 & n. 13. However, a careful reading of *Gittel* leads to a different conclusion. In both this case and in *Gittel,* any "opportunity to be heard" took place only after the parties filed motions for reconsideration objecting to the court's sua sponte order that had already been issued without notice or opportunity to be heard at that point in time.

¶ 58. In *Gittel,* the court held that the specific reason Gittel's right to notice was violated was "because the court did not refer to [Wis. Stat.] § 806.07 until the written order denying Gittel's motion for reconsideration without a hearing." *Gittel,* 255 Wis. 2d 767, ¶ 29. Similarly, in this case, it was not until after the order had already been vacated and Larry herself brought the requirements of Wis. Stat. § 806.07 to the attention of the circuit court through her letter brief and reconsideration motion that the court denied Larry's motion for reconsideration without a hearing.

¶ 59. Finally, the majority treats the individual parties in this case as interchangeable, implying that because advance notice was given by the circuit court that it was considering summary judgment against Harris, then such notice included vacating default judgment as to Rutherford as well, even though the notice did not mention Rutherford. *See* majority op., ¶ 27 & n.13. Although the alleged conduct of two parties may be the same, that does not mean that every legal filing, notice or order mentioning one automatically incorporates another party not named, particu-

larly when the unnamed individual has never made a single appearance in court. *See Estate of Otto v. Physicians Ins. Co.,* 2008 WI 78, ¶¶ 9, 13, 311 Wis. 2d 84, 751 N.W.2d 805. If notice is given that summary judgment will be considered as to Harris, but the notice is silent as to vacating default judgment with respect to Rutherford, requiring Larry to assume that the notice was also meant to refer to others not mentioned hardly constitutes "adequate notice."

¶ 60. The majority's statement that "Larry does not argue that she was prejudiced by the late notice," majority op., ¶ 27, does not remedy the problem. Whether or not Larry has specifically argued that any prejudice resulted from the late notice, this court should not undermine the legal requirements of prior notice along with an opportunity to be heard as prerequisites for a court to sua sponte vacate a default judgment order, or any other order under Wis. Stat. § 806.07.

¶ 61. For the above reasons, although I agree the majority's mandate reversing the court of appeals, rather than remand for further proceedings consistent with the default judgment against Rutherford being vacated, this court should instead reinstate the default judgment. I therefore respectfully concur in part, and dissent in part.